**William R. CASTLE et al., Appellants,**

v.

**Robert E. McLAUGHLIN et al., members of the Zoning Commission of the District of Columbia, et al., Appellees.**

**No. 14909.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1959.

Decided June 25, 1959.

Petition for Rehearing En Banc Denied
Sept. 18, 1959.

---

1. D.C.Code, §§ 22–1501, 1502, 1505.

Mr. John H. Pratt, Washington, D. C., for appellants.

Mr. Hubert B. Pair, Asst. Corp. Counsel for the District of Columbia, with

whom Messrs. Chester H. Gray, Corp. Counsel, and Milton D. Korman, Principal Asst. Corp. Counsel, were on the brief for appellee Robert E. McLaughlin and certain other appellees.

Mr. Eugene L. Goodridge, Washington, D. C., with whom Mr. John B. Letterman, Washington, D. C., was on the brief, for appellees Domain, Inc., and Lawrence N. Brandt.

Mr. Harold H. Tittmann, Washington, D. C., filed a brief on behalf of Progressive Citizens Association of Georgetown, Inc., as amicus curiae, urging reversal.

Mr. Henry G. Beauregard, Washington, D. C., filed a brief on behalf of Sheridan-Kalorama Neighborhood Council as amicus curiae, urging reversal.

Mr. Dean F. Cochran, Washington, D. C., filed a brief on behalf of Kalorama Citizens Association as amicus curiae, urging reversal. The Federation of Citizens Association of the District of Columbia, for whom Joseph Lapiana, Jr., Washington, D. C., entered an appearance, was allowed to join in the brief of the Kalorama Citizens Association, urging reversal.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a summary judgment of the District Court which denied injunctive relief to the plaintiffs-appellants in a zoning case. The basic question raised is whether on the facts before it the District Court was correct in holding that a purported amendment to the D.C. Zoning Regulations was not invalid as to the area championed by appellants, as against appellants' claim that in adopting it the Zoning Commission did not afford appellants the notice and hearing required by Section 3 of the Zoning Act of 1938, D.C.Code § 5–415 (1951).[1] The facts, as represented to the District Court and to this court, may be briefly summarized.

■ Appellants are property owners in an area which commencing in the mid-nineteen twenties was classified for zoning purposes as "A" R. This category permitted to be built or used only single family residential detached houses, and, with the approval of the Zoning Adjustment Board, semi-detached houses, with lot occupancy of 40 to 60% (depending on the shape of the lot).[2]

On April 17, 1957, the Zoning Commission published in a Washington news-

---

1. Section 5–415 provides in pertinent part that—
    "* * * The Zoning Commission may from time to time amend the regulations or any of them or the maps or any of them. Before putting into effect any amendment or amendments of said regulations, or of said map or maps, the Zoning Commission shall hold a public hearing *thereon*. At least thirty days' notice of the time and place of such hearings shall be published at least once in a daily newspaper or newspapers of general circulation in the District of Columbia. Such published notice shall include a *general summary of the proposed amendment or amendments* of the regulation or regulations and the boundaries of the territory or territories included in the amendment or amendments of the map or maps, and the time and place of the hearing. The Zoning Commission shall give such additional notice of such hearing as it shall deem feasible and

practicable. At such hearing it shall afford any person present a reasonable opportunity to be heard." (Emphasis added.)

2. The area involved consists of Squares 2517, 2518, 2519, and part of Square 2529 in Northwest Washington and is bounded on the north and west by California and 24th Streets, on the south by Massachusetts Avenue and Decatur Place, and on the east by a line commencing at California and 23rd Streets running south to Bancroft Place, then east on Bancroft Place to its dead end, then south along the existing fence to S Street, east on S Street to 22nd Street, then south on 22nd Street to Decatur Place. The area contains some 60 buildings, two thirds of which apparently do not meet the "A" R zoning requirements. These consist of apartment and row houses built before the "A" R zoning became effective, embassies with chancery adjuncts, a club, and a museum.

paper a notice of a public hearing to be held on May 27, 1957, to consider proposed amendments to the zoning regulations and maps. The notice stated inter alia that "The Zoning Commission proposes to amend the Zoning Regulations and Zoning Map of the District of Columbia *in their entirety so that no section of the present Regulations or Map will remain unchanged*," and that "Every Lot and Parcel of real property located within the District of Columbia will be affected." In the general summary of the proposed regulations, the notice stated that "Article 22 provides for the adoption of the Zoning Map which consists of a series of ten sectional maps, *and which is made a part of these proposed regulations * * *.*" Finally, the notice advised that "copies of the text of the proposed revised zoning regulations may be obtained," and "a copy of the proposed zoning map is available for inspection," in the Zoning Commission office.

Pursuant to the notice, appellants went to the office of the Zoning Commission to examine the appropriate sectional map, and found that the map proposed to change the area in question from the "A" R classification to an R–1–B classification. The R–1–B category would permit only detached single family dwellings on lots 50 feet wide, containing at least 5000 sq. ft. The category requires further that the dwelling occupy no more than 40% of the lot area, and have two side yards at least 8 feet in width. Accordingly, the stated proposal amounted to a minor "upgrading" in the zoning of the area.

At the public hearing on the proposed amendments, the appellants appeared and expressed general support for the proposed zoning plan. No objection was raised by anyone to the R–1–B zoning proposed for the area in question, nor was the matter of zoning the area in any way different from that proposed in the public notice presented or discussed.

On May 12, 1958, the Zoning Commission promulgated amended zoning regulations under which the area involved was not given the proposed R–1–B classifica-

tion but was down-graded to an R–3 category. This category would permit the erection of row houses occupying 60% of the lot area on lots 20 feet wide containing at least 2000 sq. ft. No notice of this change from the proposed amendment was given and no public hearing on the change was held prior to its adoption.

We think it unquestionable that the notice and public hearing required by Section 5–415 of the Code were not given with respect to the R–3 zoning adopted for the area in question. The notice, by means of the map incorporated therein, made a specific proposal to classify the area as R–1–B for zoning purposes. Thus in terms it gave notice of that proposal only. To be sure, there was a general admonition in the notice that the zoning of all lots and parcels in the District would be affected and changed. But the proposal for R–1–B zoning in the notice did represent a change in zoning in the area. The general notice of change can hardly be construed as notice to the public that the zoning of the particular area involved would be changed in any other way than that specifically proposed.

■ The statute states that *before* an amendment is put into effect, a public hearing shall be held *thereon*. That was not done with respect to the amendment adopted for the area involved. The only hearing held related to the proposed amendment which was finally rejected by the Zoning Commission. Before another proposal could be adopted, a notice and hearing relating to it were required under the plain terms of the statute. Cf. McClatchy Broadcasting Co. v. Federal Communications Commission, 1956, 99 U.S.App.D.C. 199, 239 F.2d 19, certiorari denied, Sacramento Telecasters Inc., v. McClatchy Broadcasting Co., 1957, 353 U.S. 918, 77 S.Ct. 662, 1 L.Ed.2d 665.

■ The hearing on the rejected amendment cannot be treated as an acceptable substitute for the required hearing, since the amendment purportedly put into effect on May 12, 1958, represented a major and substantial change from the proposed amendment. It lowered the

zoning standard for the area, whereas the proposal had been for a somewhat higher standard than that then existing. The proposal was so fundamentally changed that a public hearing was required before an amendment embodying the change could validly be adopted. This is the uniform holding under comparable statutes. See, e.g., Fish v. Town of Canton, 1948, 322 Mass. 219, 77 N.E. 2d 231; Village of Sands Point v. Sands Point Country Day School, 1955, 2 Misc. 2d 885, 148 N.Y.S.2d 312, 316, affirmed, 1956, 2 A.D.2d 769, 154 N.Y.S.2d 428; cf. State ex rel. Kling v. Nielsen, 1957, 103 Ohio App. 60, 144 N.E.2d 278.[3] Here, of course, the possibility of an R–3 classification was not alluded to at the hearing and the appellants had no opportunity to express their objections and views as to it. They were not required to anticipate the possibility of changes from the proposed amendment—changes of which not even a hint had been given. Cf. Callanan Road Improvement Co. v. Town of Newburgh, 1957, 6 Misc.2d 1071, 167 N.Y.S.2d 780, affirmed, 1958, 5 A.D. 2d 1003, 173 N.Y.S.2d 780.[4]

■■ We must reject appellees' contention that the R–3 zoning amendment, even if originally invalid, acquired a belated validity by reason of a hearing held after it became effective, on a petition promptly filed by appellants to change the zoning for the area from R–3 to R–1–B. As indicated, the statute requires notice and a public hearing *before* an amendment is put into effect, and a hearing held subsequent to its adoption does not suffice. Cf. Fierst v. William Penn Memorial Corp., 1933, 311 Pa. 263, 166 A. 761, 763. Accordingly, the appellants' participation in that hearing does not preclude them from attacking in this suit the validity of the amendment. Their purpose at that hearing was the same as it is in the present suit: to prevent an R–3 zoning for their area. We have been referred to nothing which would indicate that the appellants there undertook to concede, even for purposes of that hearing, that the R–3 amendment was validly adopted.

The summary judgment is reversed and the case is remanded to the District Court for further proceedings consistent with the views expressed herein. Such proceedings may include the taking of evidence on any disputed issues of fact, if such issues are genuine and are material to the disposition of the case under the views we have expressed. Whether the appellants are entitled to a permanent injunction against appellees, or any other form of relief, must await the outcome of those proceedings. Established equitable principles should be applied.

So ordered.

---

**3.** Moreover, even if the change from the proposed R–1–B classification to R–3 were to be regarded as minor, the validity of the amended regulation would still be in doubt. Many courts hold that even where the change adopted is only a minor one, it must grow out of matter raised at the hearing. See e. g., Neuger v. Zoning Board, 1958, 145 Conn. 625, 145 A.2d 738, 740, 741; Couch v. Zoning Commission, 1954, 141 Conn. 349, 106 A.2d 173, 177; Klaw v. Pau-Mar Construction Co., 1957, 50 Del. 487, 135 A.2d 123, 126, 127.

**4.** The Zoning Commission appears to suggest that it could properly have issued a notice and map which completely failed to state what was proposed for appellants' area. We reject any such notion. Under the statute, landowners and the public must be told as clearly and fully as is reasonably possible what is proposed by the zoning authorities. If several alternatives are to be considered for a particular area, all should be mentioned as possibilities.