Sylvester J. AQUINO, Appellant,

v.

Walter N. TOBRINER et al., Commissioners of the District of Columbia, et al.,
Appellees.

No. 16358.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 24, 1961.

Decided Dec. 14, 1961.

Petition for Rehearing Before the Division Denied Jan. 24, 1962.

Petition for Rehearing En Banc Denied
En Banc Jan. 24, 1962.

Mr. Sylvester J. Aquino, appellant pro se.

Mr. Hubert B. Pair, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, and Milton D. Korman, Principal Asst. Corp. Counsel, were on the brief, for appellees.

Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a zoning case. Plaintiff-appellant brought suit in the District Court "to set aside and declare invalid the Zoning Regulations promulgated by the Zoning Commission [of the District of Columbia] on May 12, 1958, and for other purposes." Defendants-appellees moved for summary judgment and plaintiff-appellant filed a cross motion for similar relief. After considering the pleadings, affidavits and other materials offered, the District Court granted the motion of defendants-appellees. This appeal followed.

It appears that plaintiff-appellant purchased in 1956 three adjoining lots in the 700 block of 8th Street, N. E., in the District of Columbia. At that time these lots were zoned "First Commercial." Contemplating commercial use, plaintiff caused the existing buildings—which were residential—to be demolished.[1] The lots are now unimproved. The Zoning Regulations promulgated May 12, 1958, designated the area in which plaintiff's lots are located as "R–4," a classification in which only certain types of residential construction are permitted. On February 20, 1960, plaintiff filed an application with the Zoning Commission, along with several other property owners, requesting that the 700 block of 8th Street, N. E., be re-zoned as commercial. This request was denied by the Commission on March 22, 1960. Thereafter plaintiff asked for an open hearing on his application. Such a hearing was granted on September 7, 1960. Later in September the Commission denied plaintiff's request for re-zoning. On October 17, 1960, plaintiff filed his suit in the District Court, alleging that the zoning of plaintiff's property as residential was unlawful, and has caused, and will continue to cause, irreparable harm and damage to him.

In this court plaintiff-appellant's primary contention is that appellees failed to comply with the statutory requirements as to notice of public hearing on proposed zoning changes. Hence, he alleges, the Zoning Regulations of May 12, 1958, were illegally adopted. The governing statute, Section 3 of the Zoning Act of 1938, D.C.Code § 5–415 (1951), was quoted and construed in our decision in Castle v. McLaughlin, 106 U.S.App.D.C. 145, 270 F.2d 448 (1959). Our opinion in that case also discussed the circumstances surrounding the adoption of the Regulations of May 12, 1958. As we there pointed out, notice was published in a newspaper (as required by the statute) of a public hearing to be held on May 27, 1957, to consider proposed amendments to the existing Zoning Regulations and maps. The public hearing was held and thereafter the Regulations of May 12, 1958, were promulgated. Plaintiff-appellant here relies on the provision contained in Section 3 that "The Zoning Commission shall give such additional notice [i. e., in addition to the published newspaper notice] of such hearing as it shall deem feasible and practicable." Plaintiff says in this court that the Zoning Commission gave no additional notice. However, this requirement is not mandatory. The word-

---

[1]. The complaint says that plaintiff had the buildings "torn down to establish a parking lot on the said three lots, with the intention to use said property for other commercial purposes if the occasion demanded."

ing of the statute makes it clear that, whenever reasonably possible, the Zoning Commission should give notice beyond newspaper publication. But whether, and what kind of, added notice will be given in a particular case has been left to the discretion of the Commission.[2] Under the circumstances of this case, where plaintiff has neither alleged nor offered to show that the giving of additional notice was "feasible and practicable," and where it appears that the hearing was attended by considerable publicity, we find no abuse of that discretion.[3]

 Appellant's second point is that after the hearings were held substantial changes were made in the zoning proposals originally put forward. He relies on the Castle case, supra, as calling for the granting of injunctive relief in such a situation. But appellant's reliance on that case is misplaced. There the original proposal would have upgraded the zoning of Castle's property. Castle and his neighbors attended the public hearing and expressed support for the proposal. No suggestion was made at the hearing that Castle's property and its surrounding area should or would be downgraded. However, when the regulations were issued they provided for the downgrading of the area. In the present case, plaintiff did not attend the public hearing and makes no showing as to what occurred there. The regulations as promulgated on May 12, 1958, adopted the original proposals mentioned in the published notice with respect to plaintiff's area, namely, to convert the area to the "R–4" classification. Plaintiff says, however, that the R–4 classification as originally proposed in 1957 would have imposed no requirement of a floor area ratio or limitation of lot occupancy. The final regulations, he says, impose limitations in both respects on properties in Zone R–4.[4] Even assuming that these limitations represent substantial changes in the original proposals, plaintiff makes no claim that they were not fully aired at the public hearing. The very purpose of a zoning hearing is to explore subjects such as these. In the Castle case, of course, the record showed that there was no discussion at the hearing of the possibility of downgrading the area in which Castle lived. Plaintiff has made no allegation of that sort in the present case.[5] He thus cannot rely on the Castle

2. See Hearings Before a Subcommittee of the Senate Committee on the District of Columbia on S. 3361, 75th Cong., 3d Sess. 82–83 (1938), at which Senator Overton said, among other things:

"Now, the objection is made that the Commission does not have a record of the property owners in the vicinity, and the names and addresses and so forth, in order to give that notice. How would it be to have just some general provision and say, in addition to the notice by publication, such additional notice as the Commissioners may deem proper? That would carry out that thought, without making it absolutely ironclad, so that it would become less a technical provision that the violation of any particular provision of it would jeopardize the regulation we adopted. That would be an instruction to the Zoning Commissioners to give additional notices. We have got to trust somebody in government, you know."

3. While we reiterate that "landowners and the public must be told as clearly and ful-

ly as is reasonably possible what is proposed by the zoning authorities," 106 U.S.App.D.C. at 149, fn. 4, 270 F.2d at 452, fn. 4, we cannot say on this record that appellant is entitled to relief.

4. The regulations as finally adopted contain the following definitions:

"Floor area ratio: a figure which expresses the total gross floor area as a multiple of the area of the lot. This figure is determined by dividing the gross floor area of all buildings on a lot by the area of that lot.

\* \* \* \* \*

"Percentage of lot occupancy: a figure which expresses that portion of a lot lying within lot lines and building lines which is occupied or which may be occupied under these regulations as building area." (Emphasis in original). Plaintiff says that the new regulations impose on the R–4 zone a floor area ratio of .9 and a lot occupancy ratio of 40%.

5. Moreover, there is, of course, a presumption in favor of the regularity of agency proceedings. See Lumbermen's

decision as grounds for relief. Nor has he presented a material issue of fact justifying trial.

▮▮▮ Plaintiff's remaining contention is that the change in the zoning classification of his property—and the failure of the Commission to undo that change on his petition for rezoning— was arbitrary, unreasonable and capricious. He claims to have relied on the original "commercial" classification when he demolished the existing buildings, and contends that he has a vested right in the zoning classification which existed at the time of his purchase. But it is clear that no such vested right exists, and that the scope of judicial review of alleged hardship in individual cases is a narrow one. As we said in Lewis v. District of Columbia, 89 U.S.App.D.C. 72 at 74, 190 F.2d 25 at 27 (1951):

"The necessity and desirability of zoning and city planning can no longer be subject to debate. Uncontrolled, haphazard development causes blighted neighborhoods, with their residents deprived of the amenities of decent living and of the environment which breeds good citizenship. Accordingly, Congress has given considerable discretion to the Zoning Commission for the establishment of a comprehensive zoning plan, so that the public welfare may dominate the development of the capital city.

"In reviewing the exercise of that discretion, 'It is not the function of the court to substitute its judgment for that of the Commission even for reasons which appear most persuasive. A suit to declare a zoning order void is not an appeal on the merits of the issues presented to the Commission at its hearing.' Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 143–144, 144 F.2d 505, 507–508. 'The action of zoning authorities, as

of other administrative officers, is not to be declared unconstitutional unless the court is convinced that it is "clearly arbitrary and unreasonable, having no substantial relation to the * * * general welfare." [Citing cases] If the question is "fairly · debatable," the zoning stands.' Leventhal v. District of Columbia, 69 App.D.C. 229, 230, 100 F.2d 94, 95."

On the present record we think the District Court properly denied relief. Its judgment will accordingly be

Affirmed.

Mutual Casualty Co. v. Industrial Acc. Comm., 29 Cal.2d 492, 501, 175 P.2d 823, 829 (1946); Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 226, 59 S.Ct. 206, 83 L.Ed. 126 (1938); United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926).