**W. C. & A. N. MILLER DEVELOPMENT COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent.**

**No. 7979.**

District of Columbia Court of Appeals.

Argued Nov. 6, 1974.

Decided May 2, 1975.

tween Fordham Road and Van Ness Street, N.W., officially designated as lots 800 and 801 in square 1530 and lot 800 in square 1501. It here appeals the denial by respondent District of Columbia Zoning Commission of a hearing on its proposal for a zoning map amendment to change the zoning classification of its property.

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin and John F. McCabe, Jr., Washington, D. C., were on the brief, for petitioner.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent. David P. Sutton, Asst. Corp. Counsel, Washington, D. C., also entered an appearance for respondent.

Before REILLY, Chief Judge, and KELLY, FICKLING, GALLAGHER, NEBEKER, YEAGLEY and HARRIS, Associate Judges.*

KELLY, *Associate Judge:*

Petitioner W. C. & A. N. Miller Development Company is the owner of 3.47 acres of undeveloped land located on the west side of Massachusetts Avenue be-

On June 8, 1973, petitioner submitted an application to the Zoning Commission to amend the zoning map which proposed a change in the zoning of its land from the present R–1–B[1] to an R–3[2] classification. If granted, the amendment would allow construction of townhouses on land presently zoned for one-family detached dwellings and which, except for the property to the north where a shopping center is located,[3] is surrounded by single family homes. Petitioner gave as reasons for granting the amendment the rapid growth of American University in recent years, the nearby metro construction, the excellent community services in the area, the adequate sewer connections, and the need for a transitional zone between the shopping area and the surrounding single family homes.

On November 19, 1973, the Zoning Advisory Council[4] recommended to the Zoning Commission that the proposed amendment be denied without a public hearing.[5]

---

\* Associate Judge Kern did not participate in the hearing or decision in this case.

1. D.C. Zoning Regs., § 3101.1: The R–1 District is designed to protect quiet residential areas now developed with *one-family detached dwellings* and adjoining vacant areas likely to be developed for such purposes. The regulations are designed to stabilize such areas and to promote a suitable environment for family life. For that reason only a few additional and compatible uses are permitted. The *district* is subdivided by different area requirements into R–1–A and R–1–B Districts, providing for *districts* of low and high density, respectively.

2. D.C. Zoning Regs., § 3103.1: The R–3 District is designed essentially for *row dwellings* but there would be included therein areas within which *row dwellings* are mingled with *one-family detached dwellings, one-family semi-detached dwellings,* and groups of three or more *row dwellings.* To maintain a family-life environment, permitted related uses are the same as in R–1 Districts.

3. This land is zoned C–2 (Community Business Center). *See* D.C. Zoning Regs., § 5102.

4. D.C.Code 1973, § 5–417, provides:
. . . No amendment of any zoning regulations or map shall be adopted by the Zoning Commission unless and until such amendment be first submitted to said Zoning Advisory Council and the opinion or report of such council thereon shall have been received by the commission . . . .

5. *See* Zoning Advisory Council Preliminary Report, November 19, 1973, Zoning Commission Case No. 73–18.

The Council noted in its report that no reason was given as to why the land could not be developed under the existing classification and found that the reasons cited by petitioner were as compatible with single family development as with townhouse development. The Council also rejected the transitional zone concept advanced in support of the amendment, stating that since no harm from the shopping area had been shown to the existing homes in the area, no necessity for a transitional zone existed. The Zoning Commission, meeting in executive session on November 30, 1973, voted to deny the proposed amendment.[6] The issue on appeal is whether the denial of a property owner's proposed zoning map amendment without a public hearing is a contested case within the meaning of the District of Columbia Administrative Procedure Act (DCAPA)[7] and thus subject to direct review by this court.

■ It is settled that this court has jurisdiction to review the decisions of the Zoning Commission in accordance with the DCAPA,[8] limited only to those decisions or orders entered in contested cases.[9] The term "contested case" is statutorily defined as

. . . a proceeding before the Commissioner the Council, or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by

constitutional right, to be determined after a hearing before the Commissioner or the Council or before an agency . . . .[10]

Consequently, the first obstacle to "contested case" status is that an administrative hearing must be either statutorily or constitutionally compelled; the second, that such hearing must be adjudicatory as opposed to legislative in nature.[11] Insofar as a statutory right to a public hearing on a proposed zoning amendment is concerned, D.C.Code 1973, § 5–415, provides that:

. . . The Zoning Commission may from time to time amend the regulations or any of them or the maps or any of them. Before putting into effect any amendment or amendments of said regulations, or of said map or maps, the Zoning Commission shall hold a public hearing thereon. . . .

. . . . . .

Thus it is clear that the Zoning Commission is empowered to adopt zoning map amendments after affording the requisite public hearing on any proposed amendment.

The zoning regulations[12] allow either the Zoning Commission itself or an affected property owner to propose an amendment; however, the initial decision on whether or not an amendment proposed by a property owner should be the subject of a public hearing is left to the discretion of the Zon-

---

6. Minutes of the 643rd Session, Zoning Commission Executive Session, November 30, 1973, Zoning Commission Case No. 73–18.

7. D.C.Code 1973, § 1–1501 et seq.

8. D.C.Code 1973, § 11–722. See, e. g., Citizens Ass'n of Georgetown, Inc. v. Washington, D.C.App., 291 A.2d 699 (1972); Capitol Hill Restoration Soc. v. Zoning Commission, D.C.App., 287 A.2d 101 (1972).

9. Id. § 1–1510.

10. Id. § 1–1502(8).

11. Chevy Chase Citizens Ass'n v. District of Columbia Council, D.C.App., 327 A.2d 310 (1974).

12. D.C. Zoning Regs., § 9101—Procedure for Amendments

9101.1 As provided in the Zoning Act of June 20, 1938 (52 Stat. 797), as amended, the Zoning Commission may from time to time amend any, part, or all of these regulations and zoning maps adopted herein.

9101.2 Amendments to these regulations or zoning maps may be proposed by:

9101.21 The owner of property for which amendments are proposed, or

* * * * *

ing Commission. This was not always the case.

Before 1938 the statute on changes in zoning classifications stated:

> . . . Said districts so established shall not be changed except on order of said commission after public hearing. Said commission may initiate such changes, or they may be initiated upon the petition of the owners affected. . . .[13]

That year, however, the zoning act was amended to adopt the present procedures on amendments and hearings. The legislative history of the 1938 zoning act reveals that Congress clearly intended that the Zoning Commission have the right to reject proposed zoning map or text amendments without a public hearing. The then Assistant Corporation Counsel for the District of Columbia, testifying at hearings on the new act, stated:

> Now, section 3 of the bill continues in force the existing regulations which have been promulgated under the existing law. It is provided that these regulations may be changed by the zoning commission after a hearing. . . .

> It also changes existing law in this rather important particular:

> Under the existing law, whenever a property owner secures the consents of a certain number of persons, he becomes absolutely entitled to a hearing before the zoning commission. That practice is not followed by most of the states at the present time. The zoning commission is left to initiate all of the changes, and we have adopted that policy here.[14]

The House report on the bill stated:

> Section 3 of the proposed bill continues in force the existing regulations un-

til amended as authorized by the proposed bill. It is provided that any amendment may be made provided the Zoning Commission shall hold a public hearing . . . This section differs primarily from the existing law . . . and also eliminates the requirement that the Commission must hold a public hearing upon the petition of owners affected under the conditions set forth in section 4 of the existing law.[15]

Although the zoning statute itself affords no right to a hearing, petitioner suggests that the mere submission of a proposed amendment and the subsequent rejection constitutes a hearing required by law and therefore subject to review.[16] A similar fact situation was presented in *Citizens Association of Georgetown, Inc. v. Washington,* D.C.App., 291 A.2d 699 (1972), where the Zoning Commission, after the Zoning Advisory Council had submitted a negative recommendation, refused to hold public hearings on proposed interim amendments to the zoning map. A suit in the nature of mandamus to direct the Zoning Commission to hold a hearing followed. This court denied the writ and enunciated several general principles applicable to zoning amendments; namely,

> The principal manifestation of a "contested case" is its character as a quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding. . . .[17]

We contrasted this with the legislative process of rezoning and stated that in proceedings involving proposed interim amendments:

> . . . [T]he Zoning Commission

---

13. Act of March 1, 1920, ch. 92, § 4, 41 Stat. 500.

14. Hearings before a Subcommittee of the Committee on the District of Columbia on S. 3361, 75th Cong., 3d Sess. 8 (1938).

15. H.R.Rep.No.2418, 75th Cong., 3d Sess. 1, 2 (1938).

16. D.C. Zoning Regs., supra note 12.

17. *Supra,* 291 A.2d at 703.

must play a role beyond resolution of the legal rights of specific parties. . . .[18]

In concluding that the decision-making process leading to the rejection of a proposed amendment is legislative we stated:

> . . . In short, a proceeding before the Zoning Commission on amendments relating to an area of a city lacks the specificity of subject matter and result, indicative of an adjudicatory proceeding. The proceeding is a quasi-legislative hearing conducted for the purpose of obtaining facts and information, and views of the public pertinent to the resolution of a policy decision.[19]

These principles are applicable to a case where a proposed amendment is denied without a hearing. Once a single parcel of land is rezoned it necessarily affects the surrounding area since a use previously prohibited in an area is now allowed. It also invites other property owners in the area to apply for similar amendments. Thus the decision, while affecting the individual landowner who proposes the amendment, is basically one of policy which takes into consideration the needs of the area as a whole. The authority to determine these needs is delegated to the Zoning Commission. When it exercises that authority by denying a proposed amendment without a public hearing it is acting legislatively and is not subject to contested case status and review by this court.

Finally, petitioner contends that if there is no statutory right to a hearing on its proposed amendment then the Constitution guarantees it a hearing to challenge the Zoning Commission's denial as a taking of its property without due process

18. *Id.* at 704.

19. *Id.* at 705.

20. The exercise of the police power to zone is subject to constitutional challenge in the proper forum if it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety and general welfare.

of law. In response to this contention, we start with the premise that since the act of zoning is primarily legislative and presumed valid, the original R–1–B classification of petitioner's property is valid. *Shenk v. Zoning Commission of D.C.,* 142 U.S.App.D.C. 267, 440 F.2d 295 (1971). Indeed, no challenge to the original classification is before the court. It is nevertheless clear that while property rights may not be taken away without due process of law, a property owner has no right to a particular zoning classification of his property. *Aquino v. Tobriner,* 112 U.S.App.D.C. 13, 16, 298 F.2d 674, 677 (1961). Accordingly, a hearing upon petitioner's proposed zoning map amendment before its denial was not constitutionally required.[20] Since neither a statutory right to a hearing nor a constitutional right to a hearing on the proposed amendment exists, the petition is dismissed for lack of jurisdiction.

*So ordered.*

NEBEKER, *Associate Judge,* with whom HARRIS, *Associate Judge,* joins, concurring:

With this case having been heard en banc, I am free to reject a major premise of the majority holding. I do, however, concur in the result.

The majority, in my view, continues to misconstrue D.C.Code 1973, § 1–1510, when it holds that a contested case is one requiring a trial-type hearing in what it calls an "adjudicatory" proceeding. *Chevy Chase Citizens Association v. District of Columbia Council,* D.C.App., 327 A.2d 310 (1974). To impose such an interpretation on § 1–1510 runs afoul of D.C.Code 1973, § 11–722 (which was enacted after § 1–1510

*Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) ; *Shenk v. Zoning Commission of D.C., supra.* Thus petitioner's assertion that judicial review of the Zoning Commission is impossible unless reasons for the denial are given and that such reasons can only be articulated after a public hearing may, of course, be raised in such a challenge.

to bring existing judicial review of all local agencies within the purview of one reviewing tribunal, namely, this court). However, I do not see that petitioner is entitled to any kind of hearing on its request for a zoning amendment. The only hearing required by statute is a "public hearing" if the Commission is inclined to grant the request or otherwise amend a zoning classification. *See* D.C.Code 1973, § 5–415. As part of its request for a change, petitioner has submitted evidence and argument in support of its views. It thus has been dealt with lawfully. An application for a change and an opportunity to submit reasons or views in support of the request is not a hearing within the meaning of § 1–1510. Since these proceedings do not fall within the contested case criteria articulated by the dissenting views in the *Chevy Chase* opinions,[1] I agree that the petition herein should be dismissed.

Following this rationale, I find it unnecessary to make an analysis of the nature of the administrative action involved. It is oversimplistic to take as decisive a generic view of a particular administrative decision and place it on a red or black square depending on whether the decision-making process resembles a legislative or an adjudicatory judgment. To be sure, the nature of the decision is a factor in making such a determination. However, two additional factors are the full context in which that decision is made, and the effect and its immediacy on persons seeking redress as well as on those opposed to the action. It must be remembered that nowhere in the District of Columbia Administrative Procedure Act is the term "contested case" elevated to the pinnacle of a formal trial-type hearing. The terms "legislative" and "adjudicatory" which are used in the majority opinion— and which formed the basis for the majority's decision in the *Chevy Chase* case, *supra*—are nowhere to be found in that Act,

but regrettably now provide the ambiguous touchstones of our judicial construction.

Ambiguity of their utterances is characteristic of oracles. In this way they protect their own infallibility. For if the suppliant interprets their message in one way, and this fails, the oracle can protest that it meant something quite different. So the Greeks having consulted the priestesses of Delphi before the Battle of Thermopylae were bidden to 'Look to the wooden walls' and left to decide for themselves whether this meant building a stockade or using their navy. [W. Rutherford, Ballantine's Illustrated Battle History of World War II, Kasserine Baptism of Fire, Book No. 18, at 107–08 (1970).]

REILLY, *Chief Judge* (dissenting):

In my opinion, the only conceivable ground for holding that the Commission's denial of petitioner's application did not constitute a "contested case" within the meaning of D.C.Code 1973, § 1–1502(8), is that the legislative history of the relevant portion of the Zoning Act of 1938[1] indicates that unless the Commission decides to amend a zoning map or regulation a public hearing is not required by statute. We are dealing here with "specific parties", *viz.*, a single landholder and the agency itself, so that the discussion of whether the agency action was legislative or adjudicative is beside the point, even assuming arguendo that the *Chevy Chase* case[2] was correctly decided.

But it is not enough to say that a case is not "contested" if the determination of the legal rights of the parties is not required by some law, as the term is also applicable to cases where a hearing is required by "constitutional right." As there are no provisions in the Constitution which expressly confer on any parties to an admin-

---

1. 327 A.2d at 321; 307 A.2d at 747–48.

1. D.C.Code 1973, § 5–415.

2. *Chevy Chase Cit. Ass'n v. District of Columbia Coun.*, D.C.App., 327 A.2d 310 (1974).

istrative proceeding a right to a hearing, it is obvious that what Congress meant is that a hearing is required whenever a party's claim for relief presents a substantial question of an asserted infringement upon a constitutional right—in this particular instance, a taking of property without due process of law. In this case, petitioner's papers appear to meet the substantial question test as they allege that certain intervening events since the original zoning—the building of a shopping center on adjacent land and the transformation of upper Massachusetts Avenue to a busy traffic artery—have made the tract virtually unmarketable, for there would be no purchasers of single dwellings at this location—the only kind of structure which could legally be erected under the current classification.

Of course, it is true that no landholder is entitled to a particular zoning classification by the Constitution,[3] but if he contends that the classification imposed upon his property violates a constitutional right, I see no way in which this question can be determined without a hearing. But this is precisely the question which this court is determining when it holds that no hearing was constitutionally required. In other words, it is deciding on the merits the very issue on which petitioner vainly sought to be heard.

3. *Aquino v. Tobriner*, 112 U.S.App.D.C. 13, 298 F.2d 674 (1961), which supports this proposition, cannot be relied upon by the majority for its holding that no hearing was required. In that case there was a hearing and all that the court decided was that the subsequent agency order (adverse to petitioner) was not so arbitrary or unreasonable as to violate the Constitution.