The CITIZENS ASSOCIATION OF GEORGETOWN, INC., Petitioner,

v.

Walter E. WASHINGTON et al., Respondents.

No. 6411.

District of Columbia Court of Appeals.

Argued May 5, 1972.

Decided May 19, 1972.

William D. Iverson, Washington, D. C., with whom Roberts B. Owen, Washington, D. C., was on brief, for petitioner. Courts Oulahan, Washington, D. C., also appeared on brief as counsel for petitioner.

Richard W. Barton, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and David P. Sutton, Asst. Corp. Counsel, were on brief, for respondents.

Peter S. Craig, Franz M. Oppenheimer, Washington, D. C., and Robert E. Lieblich, Alexandria, Va., counsel for Committee of 100 on the Federal City, filed a brief as amicus curiae.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

On February 3, 1972, pursuant to Article 91 of the zoning regulations, petitioner filed with the Zoning Commission proposed interim amendments to the zoning classification of an area of Washington known as the Georgetown Waterfront (Waterfront).[1] The Zoning Commission has not scheduled a public hearing on these proposed amendments and petitioner now seeks a writ of mandamus compelling the Zoning Commission to publish notice of a public hearing at which the proposed amendments would be considered.[2] In addition, petitioner requests a writ of mandamus requiring the Zoning Commission to act under the emergency regulations in D.C.Code 1967, § 1–1505(c) (Supp. V, 1972) preserving the status quo in the Georgetown Waterfront area.

Since the inception of zoning in the District of Columbia the Waterfront area has been zoned for purposes of industry and manufacturing. Currently, it is zoned C-M-2 (Commercial—Light Manufacturing) and M (General Industry). On March 26, 1971, petitioner filed a proposal with the Zoning Commission for amendment of the zoning classifications of the Waterfront area. The proposed amendment would have reduced the classification of the Waterfront from the present designations to C-2-A (Community Business Center) and R-4 (Row Dwellings, Conversions, and Apartments). Petitioner asserted that (1) the present zoning classification of the Waterfront is anachronistic as the area is not being utilized for the purposes intended by C-M-2 and M classifications; (2) reclassification is necessary in order to bring the area into accord with the intention of Congress to preserve and perpetuate the historic value of the area; (3) the Georgetown area would be threatened with disintegration in the absence of rezoning; and (4) the general welfare of the District of Columbia would be harmed by adverse effects upon Georgetown resulting from maintenance of present zoning classifications. Approximately eight months after the filing of this petition the Zoning Com-

---

1. The Georgetown Waterfront consists of land south of M Street, N.W., bounded by the Potomac River from Rock Creek to the Francis Scott Key Bridge. The historic nature of this area has been recognized in a variety of Congressional enactments. The Old Georgetown Act (D.C. Code 1967, §§ 5–801 to –807) seeks "to preserve and protect the places and areas of historic interest, exterior architectural features and examples of the type of architecture . . . . " The Secretary of the Interior has designated the entire historic district of Georgetown, including the Waterfront area, as a Registered National Historic Landmark under the National Historic Preservation Act of 1966. (16 U.S.C. 470–470n (1970).) Finally, the Chesapeake & Ohio Canal which runs through the Waterfront area has been designated a national park. P.L. No. 91–664, 84 Stat. 1978 (1971).

Approximately 43 acres are privately owned and subject to the zoning ordinances.

2. A memorandum amicus curiae was submitted in support of the petition by the Committee of 100 on the Federal City.

mission, in November 1971, denied the proposed amendment.

On February 3, 1972, petitioner filed proposals with the Zoning Commission for interim zoning amendments affecting the zoning of the Waterfront area.[3] Although these proposals were based upon the same general considerations as the proposal in 1971, two recent occurrences provided new and immediate problems for the Zoning Commission's consideration.

On January 26, 1972, the National Capital Planning Commission and the District of Columbia executed a contract for a $250,000 study of the Waterfront area in order to "prepare a development plan and program for the Study Area." The ultimate goal of the study is the formulation of a comprehensive plan for the Waterfront, preserving the historic value of the area while providing maximum beneficial land usage in the area. The contract indicates that, at least currently, the comprehensive plan for the Capital provides for "predominantly residential development" of the Waterfront area. Petitioner argues that· with such a comprehensive plan in sight the study by itself presents a compelling reason for Zoning Commission action assuring the status quo in the area until the plan may be settled. Petitioner contends the study becomes especially meaningful and the necessity for interim action particularly pressing when taken in conjunction with the second recent occurrence affecting the Waterfront. This event is the announcement that private developers

are now planning to construct a high rise office building near the center of the Waterfront area. The proposed building has been tentatively approved by the Fine Arts Commission, and petitioner fears the developers may soon obtain a building permit and begin construction, thereby strengthening the developers' claim to a vested right in the construction of the building. In addition, petitioner asserts that still another large office building is currently being planned there. Since both structures would conform with the present zoning requirements for the Waterfront, says petitioner, the zoning regulations present no current barrier to their construction.

Asserting that the value of the study now underway would be severely diminished if during its pendency large office buildings were constructed in the Waterfront area, petitioner proposed three alternative interim amendments[4] to the Zoning Commission. Any one of these amendments would prevent the construction of a large office building on a Waterfront area site. Petitioner here argues that the Zoning Commission has exceeded the boundaries of its discretion by the failure for over three months to initiate any hearings on the proposals.[5]

As a prologue, it is a matter of common knowledge that rezoning of the Waterfront area has been under serious discussion in this city for well over a decade. In fact, almost four years ago the National Capital Planning Commission which, among other

3. An interim zoning amendment was approved in Salyer v. McLaughlin, 100 U.S.App.D.C. 29, 240 F.2d 891 (1957).

4. The first proposed amendment consists of C–1 (Neighborhood Shopping) classifications for certain streets in the area and R–4 (Row Dwellings, Conversions, and Apartments) for the remainder of the area. The second proposed amendment would rezone the entire Waterfront area C–1. Finally, the third proposal would not change the zoning classifications but would provide height, area, and bulk restrictions applicable to C–1 districts upon all buildings in the area.

5. Although no public hearings have been scheduled on the proposed interim amendments it would be incorrect to say that the Zoning Commission has taken no action on petitioner's proposals. The proposed amendments were submitted to the Zoning Advisory Council for study and a recommendation. The report of the Zoning Advisory Council, which recommended rejection of the interim amendments, was received by the Zoning Commission on April 5, 1972, that is, six days prior to filing of the petition for a writ of mandamus.

things, is charged with the duty of preparing a comprehensive plan of land use in the city,[6] adopted an advisory plan for the entire District of Columbia, including the Georgetown Waterfront area. After all this time the land lies fallow, from a rezoning standpoint. But it now is evident that significant steps are being taken to rezone. It would be difficult to argue against the proposition that since rezoning of the area apparently will eventuate in the not distant future no important construction should take place there before the rezoning is accomplished, if this is avoidable. It would be natural to assume there would be no temporizing and the Zoning Commission (or perhaps other government officials) would take whatever legal precautions that may be available to prevent this lest well-laid plans for the Waterfront lose much of their expectation or, worse, become a futile exercise. And speaking of this, it is usually the first hole in the dike that brings the flood.

■ In considering the applicability of mandamus to this case, however, we start with the settled principle that mandamus will lie only in cases within the court's ultimate review jurisdiction. All Writs Statute, 28 U.S.C. § 1651 (1970);[7] Chandler v. Judicial Council of Tenth Circuit of United States, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970); FTC v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). Petitioner asserts that such review jurisdiction exists in this court over this case by virtue of the judicial review provision[8] of the District of Columbia Administrative Procedure Act.[9] Since the APA provides direct judicial review by this court only for those administrative proceedings falling within the definition of a "contested case"[10] the initial determination must be whether proceedings before the Zoning Commission on petitioner's proposed amendments to the zoning classifications of the Waterfront area constitute a "contested case" within the meaning of the APA.[11]

■■ The principal manifestation of a "contested case" is its character as a quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding. *See* Capitol Hill Restoration Soc'y v. Zoning Commission, D.C. App., 287 A.2d 101 (1972).[12] *See also* K.

6. 40 U.S.C. § 71c (1970) also found in D.C. Code 1967, § 1–1003.

7. The All Writs Statute provides:
   (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
   This statute has been held applicable to the District of Columbia Court of Appeals. Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969); *see* Mike's Mfg. Co. v. Zimzoris, D.C.Mun.App., 66 A.2d 414 (1949).

8. D.C.Code 1967, § 1–1510 (Supp. V, 1972).

9. D.C.Code 1967, §§ 1–1501 to –1510 (Supp. V, 1972).

10. D.C.Code 1967, § 1–1502(8) (Supp. V, 1972) defines a "contested case" as:
    [A] proceeding before the Commissioner, the Council, or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing before the Commissioner or the Council or before an agency . . . .

11. As identical principles govern the possible "contested case" status of both proceedings on proposed interim amendments and proceedings for emergency regulations in this case and as a hearing on the interim amendments is the primary goal sought by petitioner, our discussion of this case will for purposes of simplification be confined to the proceedings on the interim amendments. Of course, the decision reached as to these proposals also applies to the petition for emergency action.

12. In *Capitol Hill*, this court traced the legislative history of the definition of a "contested case." The term "contested case", and in fact the entire District of Columbia APA, was based upon the Model State Administrative Procedure Act. The

Davis, Administrative Law Treatise §§ 5.-01, 7.02 (1958). Consequently, when a proceeding before an agency assumes primarily a quasi-judicial nature, the proceeding is governed by the "contested case" provision of the APA. Capitol Hill Restoration Soc'y v. Zoning Commission, *supra*.

It is beyond dispute that the power to zone is legislative and that the Zoning Commission, acting under delegated authority,[13] is a quasi-legislative body. Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074 (1927); Shenk v. Zoning Commission, 142 U.S.App. D.C. 267, 440 F.2d 295 (1971); Diedrich v. Zoning Commission, 129 U.S.App.D.C. 265, 393 F.2d 666 (1968); Gerstenfeld v. Jett, 126 U.S.App.D.C. 119, 374 F.2d 333 (1967); Lewis v. District of Columbia, 89 U.S.App.D.C. 72, 190 F.2d 25 (1951); Leventhal v. District of Columbia, 69 App.D.C. 229, 100 F.2d 94 (1938); Garrity v. District of Columbia, 66 App.D.C. 256, 86 F.2d 207 (1936); American University v. Prentiss, 113 F.Supp. 389 (D.D.C.1953), aff'd 94 U.S.App.D.C. 204, 214 F.2d 282, cert. denied, Wrather v. American University, 348 U.S. 898, 75 S.Ct. 217, 99 L.Ed. 705 (1954).

Yet, as *Capitol Hill, supra*, demonstrates, where a hearing resolves fact questions of specific applicability, the Zoning Commission performs primarily an adjudicative function, and the proceeding falls within the contested case provision of the APA. Consequently, in order to decide whether a proceeding before the Zoning Commission should ultimately be found primarily legislative or adjudicatory, we must consider whether in the particular proceeding, the Zoning Commission performs an adjudicative function, weighing particular information and arriving at a decision directed at the rights of specific individuals, or sits in a legislative capacity, making a policy decision directed toward the general public.[14]

In a proceeding involving the interim amendments proposed by petitioner, the Zoning Commission must play a role beyond resolution of the legal rights of specific parties. The decision whether to amend the zoning classifications of the Waterfront area will depend upon the compilation and analysis of exhaustive information concerning the economic, environmental and aesthetic ramifications of various modes of development for the Waterfront. Policy decisions regarding the

comments to the Model Act make it clear that for the purposes of this case, "contested case" is synonymous with "adjudication" in the federal APA. 287 A.2d at 104. For cases construing the determination of rights of specific parties in particular factual contests to be within the adjudication provision of the federal APA (5 U.S.C. § 554 (1970)), see Wong Yang Sung v. McGrath, 339 U.S. 33, 50–51, 70 S.Ct. 445, 94 L.Ed. 616 (1950); Door v. Donaldson, 90 U.S.App. D.C. 188, 195 F.2d 764 (1952).

13. Congressional authorization for the enactment of zoning regulations and classifications and the amendment of zoning regulations and classifications is found in D.C.Code 1967, §§ 5–413, 5–415, respectively.

14. The classic distinction drawn by Professor Davis between legislative and adjudicative facts is:

Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.

K. Davis, Administrative Law Treatise § 7.02, at 413 (1958); see Marine Space Enclosures, Inc. v. Federal Maritime Comm'n, 137 U.S.App.D.C. 9, 21 n. 38, 420 F.2d 577, 589 n. 38 (1969); American Airlines, Inc. v. CAB, 123 U.S.App. D.C. 310, 359 F.2d 624, cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966).

proper mixture, location and size of housing and commercial facilities and possibly the placement of transportation facilities must be made; and the opinions of a wide cross section of interested citizens may well be considered. The Zoning Commission's evaluation of the area would not rest upon the status of any particular property, nor would the peculiar problems of any one individual in the area be of paramount concern. It is difficult to conceive that factual findings would be required on the particular status of specific individuals. In short, a proceeding before the Zoning Commission on amendments relating to an area of a city lacks the specificity of subject matter and result, indicative of an adjudicatory proceeding. The proceeding is a quasi-legislative hearing conducted for the purpose of obtaining facts and information, and views of the public pertinent to the resolution of a policy decision.

Finally, this case is not controlled by Capitol Hill Restoration Soc'y v. Zoning Commission, *supra.* Unlike hearings held on Planned Unit Developments under Article 75 of the zoning regulations, a proceeding before the Zoning Commission in this case under Article 91 would not take place in the context of a concrete, extant plan of development for a particular site. Here, the Zoning Commission has before it an area split into parcels of various sizes and distributed among numerous owners. The issues to be resolved by the Zoning Commission are general in nature rather than specific considerations found determinative in the *Capitol Hill* case.

In view of the quasi-legislative character of any proceedings in the present case, we conclude it is not a "contested case" within the APA subject to direct judicial review in this court.[15] Having reached this conclusion this is as far as we need go here in determining whether a writ of mandamus should issue, since fundamentally the writ may issue only in aid of the court's appellate jurisdiction.[16] Morrow v. District of Columbia, 135 U.S.App. D.C. 160, 417 F.2d 728 (1969); Mike's Mfg. Co. v. Zimzoris, D.C.Mun.App., 66 A.2d 414 (1949).[17]

Petition for Writ of Mandamus is denied.

---

15. We do not reach the merits of petitioner's claim of unreasonable delay. We note, however, that courts have held unreasonable delay by an administrative agency in performing a required function may effectively constitute a denial of relief subject to judicial action. *See* Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970). *See also* Kessler v. FCC, 117 U. S.App.D.C. 130, 141 n. 10, 326 F.2d 673, 684 n. 10 (1963); International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. National Mediation Bd., 138 U.S. App.D.C. 96, 425 F.2d 527 (1970); Deering-Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961). In this connection, respondent apparently feels it is necessary to await promulgation of its new Rules of

Procedure before a hearing may be commenced, but the Commission could proceed under special rules adopted for the proceeding.

16. *See also* D.C.Code 1967, § 1–1505(b) (Supp. V, 1972).

17. Nothing in this opinion should be construed as expressing a view concerning any equitable remedies which may be, or may become, available to petitioner. *See, e. g.,* Deering-Milliken, Inc. v. Johnston, *supra* note 15, at 861–65. Nor should it be read as barring resort to any such remedies. Our views herein relate only to the issue of whether this court has review powers under the APA in this particular proceeding from a decision of the Zoning Commission.