Charles M. SCHNEIDER et al., Petitioners,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent,

The International Association of Wall and Ceiling Contractors, Intervenor.

No. 8488.

District of Columbia Court of Appeals.

Argued Sept. 21, 1977.

Decided Feb. 13, 1978.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow, John F. McCabe, Jr., and Glenn D. Simpson, Washington, D. C., were on the brief, for petitioners.

Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Richard W. Barton, Deputy Corp. Counsel, John C. Salyer, III and Michael A. Cain, Asst. Corp. Counsel, were on the brief, for respondent. James N. Dulcan and Leo N. Gorman, Asst. Corporation Counsels, Washington, D. C., entered appearances for respondent.

Glenn D. Simpson, Washington, D. C., entered an appearance for intervenor.

Before NEWMAN, Chief Judge, and GALLAGHER and FERREN, Associate Judges.

NEWMAN, Chief Judge:

Petitioner contends that the Zoning Commission erred in conducting its proceedings in this case as Part III, "rulemaking" proceedings,[1] as distinguished from Part II, "contested-case" proceedings,[2] and seeks to have us vacate the rezoning order entered by the Commission. Since our direct review under the District of Columbia Administrative Procedure Act, D.C.Code 1973, § 1–1501 *et seq.* (DCAPA), is limited to "contested cases," we must determine whether the decision of the Commission to proceed by "rulemaking" was proper. Concluding that it was, we lack jurisdiction to further review the matter. We dismiss the petition.

The question presented to the Zoning Commission was whether a number of pieces of property to the north and east of Dupont Circle ought to be rezoned from their then-existing zoning classifications as "R–5–C" and "SP" to an "R–5–B" status.[3] The proceedings before the Commission commenced with the filing of petitions by several residents and neighborhood associations who were concerned that high-density, high-rise residential construction was under consideration for some of the properties in question.[4] The purpose of the proposed re-

---

1. *See* Rules of Practice and Procedure Before the Zoning Commission of the District of Columbia, 20 DCRR § 3.1 *et seq.*

2. *Id.* § 2.1 *et seq.*

3. Stated generally, the effect of these rezonings would be to lower the permissible height, lot occupation percentage, and occupancy density of any structures placed on the lots in question. *See* Zoning Regulations of the District of Columbia §§ 3105.1, 3201.1, 3302.1, 3303.1, 4101.1, 4101.3, 4201.1, 4301.1, 4302.1. The permissible uses of the property would essentially remain unchanged. *Id.* §§ 3105.3, 4101.3.

4. One of the "petitions" was in the form of a letter sent to the Commission ostensibly on behalf of the Dupont Circle Citizens Association. This letter was subsequently disavowed by that group as an unauthorized communication. A second "petition," also in letter form,

zoning was to preclude such construction in the subject area. Following receipt of a report by the Office of Planning and Management (OPM), the Commission voted to hold public hearings on the proposed changes and published notice to that effect. Both in that notice and at the outset of the hearing on November 28, 1973, the Commission stated that the proceedings would be conducted as "rulemaking" hearings and therefore would not include the various procedures attending hearings conducted pursuant to Part II of the Commission's procedural rules, which are "adjudicatory" or "contested-case" proceedings.[5] Petitioners timely objected to the decision to proceed under Part III rather than under Part II. Hearings were then conducted. On May 21, 1974, the Commission promulgated its order rezoning the properties in the manner sought. Subsequent motions for reconsideration were denied. On June 21, 1974, the Commission issued a Statement of Reasons in support of its order. This petition for review was filed thereafter.

D.C.Code 1977 Supp., § 1–1502(8) defines a "contested case" as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency . . .." We have previously held that the statutory right to a hearing, a right afforded by D.C.Code 1973, § 5–415, does not, in and of itself, confer "contested-case" status on hearings conducted by the Zoning Commission. *Dupont Circle Citizen's Association v. D.C. Zoning Commission*, D.C.App., 343 A.2d 296, 299 (1975) (en banc); *Chevy Chase*

*Citizens Association v. District of Columbia Council*, D.C.App., 327 A.2d 310, 314 (1974) (en banc). Thus, in *Chevy Chase* we interpreted the phrase "after a hearing" in the definition of "contested case" to mean "after a trial-type hearing where such is implicitly required by either the organic act or constitutional right." *Id.* (citations omitted).

We have further recognized both that "the power to zone is legislative and that the Zoning Commission, acting under delegated authority, is a quasi-legislative body,"[6] and that "where a hearing resolves fact questions of specific applicability, the Zoning Commission performs primarily an adjudicative function."[7] However, we have eschewed any bright-line analysis and have instead opted for a functional test in determining whether, on a specific set of facts, a trial-type hearing is required before an amendment to the zoning map may be adopted. In *Chevy Chase*, we articulated that test in the following manner:

An administrative proceeding is primarily adjudicatory—and therefore governed by "contested-case" procedural requirements—if it is concerned basically with weighing particular information and arriving at a decision directed at the rights of specific parties. On the other hand, an administrative proceeding is not subject to "contested-case" procedural requirements if it is acting in a legislative capacity, making policy decisions directed toward the general public. [*Chevy Chase Citizens Association v. District of Columbia Council, supra,* 327 A.2d at 313 (footnote and citations omitted).]

See *Dupont Circle Citizen's Association v. D.C. Zoning Commission, supra,* 343 A.2d at 300.

---

was received from the North Dupont Community Association. It appears that the focal point of their concern was the anticipated construction of a high-rise apartment building at the northeast corner of 19th and Corcoran Streets.

**5.** *See* note 2, *supra.* Part II proceedings constitute "contested cases" within the meaning of D.C.Code 1977 Supp., § 1–1509, and as such must be conducted in accordance with the procedures set forth therein, including, *inter alia,* the right to cross-examination and the right to

findings of fact and conclusions of law "supported by and in accordance with the reliable, probative, and substantial evidence."

**6.** *Citizens Ass'n of Georgetown, Inc. v. Washington,* D.C.App., 291 A.2d 699, 704 (1972) (citations and footnotes omitted).

**7.** *Id.,* citing *Capitol Hill Restoration Soc'y v. Zoning Comm'n,* D.C.App., 287 A.2d 101 (1972) (*Capitol Hill I*).

Our decisions reviewing Zoning Commission actions demonstrate our adherence to this functional distinction. In *Capitol Hill Restoration Society v. Zoning Commission*, D.C.App., 287 A.2d 101 (1972) (*Capitol Hill I*), we held that a proceeding upon an application for preliminary approval of a Planned Unit Development (PUD) was a "contested case," pointing to the fact that the Zoning Regulations required the Commission to answer a series of questions specifically applicable to the PUD and its effect on the surrounding area.[8] In other words, we determined that the unique and special features of a PUD application mandated a Part II "adjudicatory-type" hearing.

In *Citizens Association of Georgetown, Inc. v. Washington*, D.C.App., 291 A.2d 699 (1972), we were faced with the question of whether the Zoning Commission properly used "rulemaking" procedures, rather than "contested-case" procedures, where it adopted proposed interim amendments to the zoning map, which amendments were designed to preclude construction in the Georgetown waterfront area during the pendency of the Commission's consideration of extensive rezoning in that area. Holding that the proceeding before the Commission was not a "contested case," we stated:

> The decision whether to amend the zoning classifications of the Waterfront area will depend upon the compilation and analysis of exhaustive information concerning the economic, environmental and aesthetic ramifications of various modes of development for the Waterfront. Policy decisions regarding the proper mixture, location and size of housing and commercial facilities and possibly the placement of transportation facilities must be made; and the opinions of a wide cross section of interested citizens may well be considered. The Zoning

Commission's evaluation of the area would not rest upon the status of any particular property, nor would the peculiar problems of any one individual in the area be of paramount concern. It is difficult to conceive that factual findings would be required on the particular status of specific individuals. In short, a proceeding before the Zoning Commission on amendments relating to an area of a city lacks the specificity of subject matter and result, indicative of an adjudicatory proceeding. [*Id.* at 704–05.][9]

In *Chevy Chase, supra,* we held en banc that Zoning Commission a hearing addressing the question of whether a *single block* of 44th Street, N. W. ought to be closed, and title thereto allowed to revert to abutting landowners, did not constitute a "contested case" and therefore was not subject to our review on the merits. In so concluding we pointed out that

> the [District of Columbia] Council, in deciding whether to close a street, considers and devises broad policy—that goes beyond the circumstances of specific parties—relating instead to the public generally. Policy decisions must be made with respect to such matters as traffic flow, transportation facilities, population density, and proper mixture of housing, commercial facilities, schools and parks. In making these policy decisions, the Council tends to consult broad relevant surveys, studies and published reports. Expertise from other government departments is sought. . . . [And] the Council considers the opinion not only of the abutting property owners but also of the public generally. . . .

To impose "contested-case" procedures such as cross-examination on such an inquiry would serve only to frustrate the

---

8. *Id.* at 105.

9. Addressing the holding in *Capitol Hill I* directly, the court in *Georgetown* stated:

> Unlike hearings held on Planned Unit Developments . . ., a proceeding before the Zoning Commission in this case . . . would not take place in the context of a concrete, extant plan of development for a particular site. Here, the Zoning Commission has before it an area split into parcels of various sizes and distributed among numerous owners. The issues to be resolved by the Zoning Commission are general in nature rather than specific considerations found determinative in the *Capitol Hill* case. [291 A.2d at 705.]

Council's decision making. [327 A.2d at 316–17 (footnote omitted).]

In *Dupont Circle, supra,* we held en banc that a decision to amend the zoning regulations to allow halfway houses in zoning districts where they had previously been forbidden was not subject to "contested-case" procedures. In arriving at our decision that the Commission had properly proceeded by "rulemaking" proceedings, we pointed to two crucial factors: (1) that "a wide cross section of the community stated their views, pro and con, about the proposed amendment to the Zoning Commission", and (2) that "[a]ll questions raised at the hearing were of a basic policy nature, e. g., where to locate halfway houses, what procedures to follow, how do halfway houses affect neighborhoods, etc." 343 A.2d at 300–01.

Thus, in no appeal from a Zoning Commission order issued after a Part III proceeding before it involving more than a single parcel of land, and in which the question of a "contested case" was squarely presented for our determination, have we held that the "contested-case" procedure applied.[10]

Petitioners attempt to distinguish the instant case from those discussed above on the ground that in each of those cases the Commission's action was taken in light of an overall plan for the area then under consideration, while in the instant case,

there was no such plan.[11] In effect, petitioners seek to have this court impose the stringent requirement that the Commission have before it a plan which it seeks to implement by its zoning amendment before it may undertake such action in a "noncontested" manner. We reject this invitation, for to so hold would completely hamstring the Commission in performing its legislatively delegated functions. By its own rule, the Commission must determine in advance of the hearing whether it is going to conduct an "adjudicative" or "rulemaking" type hearing. 20 DCRR § 2.22. In reaching this determination, the Commission must consider "the number and size of the lots or parcels to be rezoned, the number of owners, whether there are fact questions of specific applicability or whether facts, information and views from a wide cross section of the public are sought by the Commission to aid it in making a policy decision directed toward the general public." *Id.* Where the Commission, upon its evaluation of the aforementioned factors, determines that the nature of the hearing it intends to conduct is more conducive to a "rulemaking" or "noncontested" procedure, the hearing which it ultimately conducts must demonstrate that the Commission has, in fact, proceeded to consider those factors which led to the initial determination to conduct a "rulemaking" hearing, regardless of whether it has before it a preconceived plan. If the Commission is, in fact, and not just in

10. Our recent decision in *Capitol Hill Restoration Soc'y v. Zoning Comm'n of the District of Columbia,* D.C.App., 380 A.2d 174 (1977) (*Capitol Hill II*), is not to the contrary on this point, for we there held—as was required by our prior holding in *Palisades Citizens Assoc. v. Zoning Comm'n,* D.C.App., 368 A.2d 1143 (1977)—that where the Commission has proceeded to treat the matter as a "contested case," we would do likewise absent substantial prejudice to an interested party.

As have parties in many prior cases, present petitioners urge upon us the approach to the "contested-case" issue adopted by the Court of Appeals of Maryland in such cases as *Hyson v. Montgomery County Council,* 242 Md. 55, 217 A.2d 578 (1966). We make explicit here what is *at least* clearly implicit in our prior en banc holdings in *Dupont Circle* and *Chevy Chase*

—we decline to adopt the approach of our sister jurisdiction, Maryland, to this issue. *See City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976).

11. Petitioners expressly stated at oral argument that in urging this position they are not suggesting that the Commission's actions in the instant case were controlled by the amendment to D.C.Code 1977 Supp., § 5–414, *i. e.,* "comprehensive plan," and so we need not address that issue. Thus, we need not consider whether said amendments, whatever their effect, have retroactive application. However, we do note in this regard that the Commission's order, review of which is here sought, was entered in the summer of 1974, *i. e.,* well before January 2, 1975, the effective date of said amendments.

procedural form, acting as a legislative body—as we define that function in *Chevy Chase, Dupont Circle,* and here—then it may properly develop its "plan" (more appropriately viewed as its goals for a particular area of the city) in the hearing itself. This court sits in appellate review solely for the purpose of determining whether the nature of the substantive matters considered at the hearing reflects the validity of the Commission's determination to proceed as a legislative body.[12]

Viewed from this perspective, we are satisfied that the Commission properly proceeded by "rulemaking" in this case. Notwithstanding petitioners' depiction of this case as one involving three isolated pieces of property, it is evident that the Commission, by its order here challenged, rezoned at least fifty lots in six squares.[13] Although the Commission did not undertake to rezone an entire sector of the city, the referable parcels did constitute an area of substantial size and, more importantly, had significant impact on the Dupont Circle locale. Moreover, the record reflects that the Commission solicited and received testimony regarding the impact of imminent high-rise development on the entire Dupont Circle vicinity, not merely on the properties closest to the rezoned parcels. This testimony came not only from residents of the immediate Dupont Circle neighborhood but also from individuals and groups around the city.

▇▇ Petitioners point to the circumstance that the Commission undertook to hold hearings on the proposed amendment because of petitions from certain neighborhood groups concerned with the imminent development of the surrounding areas [14] as indicative of the nonlegislative nature of the proceedings. We find this to be without legal significance. While it is true that the impetus for these hearings came from citizens who were concerned with the impact of a high-rise structure on a particular piece of property, this factor is of no consequence in determining whether a particular proceeding constitutes a "contested case." Further, we note that the Zoning Committee of the National Capital Planning Commission saw this case as one involving the more general issue of zoning in the entire Dupont Circle area.[15] The OPM report also viewed the case in this light.[16] In short, there is more than ample basis to conclude that this was not a case involving specific rights of specific parties, but was one involving the broad-based issue of the appropriate future development of an area of the District of Columbia.[17]

▇▇ In light of our conclusion that the instant proceeding did not constitute a "contested case," we do not address the merits of the Zoning Commission's decision

12. We perceive no substantial prejudice to petitioners due to the Commission's failure to state its reasons (in advance of the hearing) supporting the determination to proceed in a "noncontested" manner. The only question here is whether the Commission was justified in so doing.

13. Petitioners concede, as they must in light of the facts, that all property that lay within the referable areas, as were listed in the challenged order, were rezoned by virtue of the Commission's action. Hence, the attempt to depict the Commission's action as one designed to pick out three specific parcels of property for rezoning, an action which, if taken, would arguably constitute the long-forbidden practice of "spot zoning," is an inaccurate characterization of the Commission's action.

14. *See* note 4, *supra.*

15. R. at 103.

16. R. at 347. The OPM report, couching the issue in general policy terms, was received by the Commission prior to its decision to conduct the hearings as a "noncontested" matter.

17. In regard to petitioners' argument concerning the impetus for the Commission hearings, we note that the DCAPA's provision regarding public participation in rulemaking D.C.Code 1977 Supp., § 1–1505(b), specifically allows that "[a]ny interested person may petition the Mayor or an independent agency, requesting the promulgation, amendment, or repeal of any rule." Given this provision, it would be incongruous to conclude that whenever a person exercises this statutory right, a "rulemaking" proceeding becomes subject to the "contested-case" requirements of the DCAPA.

but rather dismiss for want of jurisdiction to review.[18]

*So ordered.*

---

18. We note that the sole review sought by this petition is *direct* review under the DCAPA. Thus, it is solely that issue which we decide. *See Dupont Circle, supra,* 343 A.2d at 308.