*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-730

PAL DC STORAGE, LLC, PETITIONER,

V.

DISTRICT OF COLUMBIA
ZONING COMMISSION, RESPONDENT.

Petition for Review of an Order of the
District of Columbia Zoning Commission
(ZC No. 17-17)

(Argued May 7, 2019                                    Decided June 18, 2020)

*Meridith Moldenhauer*, with whom *Samantha Mazo*, and *Eric J. DeBear* were on the brief, for petitioner.

*Graham E. Phillips*, Assistant Attorney General, with whom *Richard S. Love*, Senior Assistant Attorney General, *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for respondent.

Before GLICKMAN and THOMPSON, *Associate Judges*, and GREENE,[*] *Senior Judge*.

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

GREENE, *Senior Judge*: Petitioner PAL DC Storage, LLC (PAL) argues in this zoning map amendment case that the Zoning Commission erred in conducting its proceedings as "rulemaking" rather than "contested-case" proceedings in downzoning a parcel of property. Because we conclude that (1) the Commission properly processed this case as a rulemaking case, and (2) this court does not have direct review jurisdiction over rulemaking cases, we dismiss the petition.

## I. Procedural History

### A. Background

In August 2017, PAL obtained a building permit from the District's Department of Consumer and Regulatory Affairs for the construction of a storage facility at 1401 22nd Street S.E. in the District of Columbia.[1] On September 27, 2017, Advisory Neighborhood Commission (ANC) 8A filed an application/petition

---

[1] On June 14, 2017, before PAL obtained its building permit, Fairlawn Citizens Association, Inc. sent a letter opposing the permit and the construction of a storage facility, pointing out that it would be located "within 50 yards of Orr Elementary School," would "lead to an increase in commercial activity that would be to the detriment of the residential character of this part of the Fairlawn community," and would lead to "added traffic" that would "cause a public safety issue as it clashes with the volumes of foot, bicycle, and vehicular traffic using Anacostia Park."

to amend the zoning map where the property is located. As part of ANC's downzoning request, ANC Commissioner Holly Muhammad explained that the property's commercial zoning (C-M-1) was "obsolete and inconsistent with the current surrounding residential R-5-B zoning," inconsistent with "future [land use] policies as outlined by the Office of Planning Far Northeast & Southeast Area Element guidelines," and incompatible with "the surrounding neighborhood which consist[s] of housing, an elementary school and the gateway to Anacostia Park."

On September 27, 2017, District of Columbia Ward 8 Councilmember Trayon White sent a letter to the District Department of Transportation (DDOT) opposing the development of a storage facility on the property because it would "destroy our only recreational park area in Ward 8, . . . destroy the character of our residential neighborhood, increase safety concerns for our pedestrians and cyclers in the neighborhood, [and] cause an added safety hazard to our children en-route to and from Orr Elementary School and the Anacostia Park."

On October 5, 2017, the Zoning Commission notified ANC 8A and Commissioner Muhammad that it accepted the petition for processing, and a week later the Office of Planning recommended "setting down" the proposed

downzoning amendment from Production Distribution and Repair (PDR-1) to Residential Apartment-2 (RA-2),[2] finding that the amendment would be consistent with (1) the Future Land Use Map (FLUM) for the District of Columbia, which designates the property where PAL sought to build its storage facility as "Moderate Density Residential," (2) the FLUM policies of "Conserving of Low Density Neighborhoods," conserving "Row House Neighborhoods," and linking neighborhoods of the Far Northeast and Southeast to the Anacostia River through trail, path, transit and road improvements, and (3) "Citywide Elements" policies that "prevent the encroachment of inappropriate commercial uses in residential areas," "encourage the private sector to provide new housing to meet the needs of present and future District residents at locations consistent with District land use policies and objectives," and "[s]trongly encourage the development of new housing on surplus, vacant and underutilized land in all parts of the city."

---

[2] PDR-1 zones permit moderate-density commercial and production distribution and repair activities employing a large workforce and requiring some heavy machinery, while RA-2 zones permit urban residential development and compatible institutional and semi-public buildings. Although a storage facility would be permitted in a PDR-1 zone, such a facility would constitute a nonconforming use in an RA-2 zone.

At its October 16, 2017 meeting, the Zoning Commission voted five to zero to set down the case as a rulemaking case. In its subsequent notice of public hearing, which was initially to be held on February 15, 2018, the Commission indicated once again that this would be a rulemaking case.

On February 2, 2018, the DDOT submitted its analysis of the proposed downzoning, noting that it did not object to the proposed amendment. In addition to highlighting the decreased maximum density available for development, the DDOT noted how fewer vehicle trips would occur if the lot was downzoned.

On February 5, 2018, the Office of Planning[3] issued a hearing report again recommending that the Zoning Commission approve the proposed downzoning, because "[t]he proposed map amendment reflects the anticipated land use on the Comprehensive Plan Future Land Use Map."

On February 6, 2018, PAL requested a postponement of the scheduled February 15, 2018 hearing, pointing out, *inter alia*, that ANC 8A would not be

---

[3] The Office of Planning's views "are statutorily entitled to 'great weight.' D.C. Code § 6-623.04 (2012 Repl.)." *Barry Farm Tenants and Allies Ass'n v. District of Columbia Zoning Comm'n*, 182 A.3d 1214, 1227 (D.C. 2018).

prejudiced by a postponement, given that the proposed restrictive zone controlled while the case was pending, and that the building permit for the site already was vested.[4]  Thereafter, the hearing was postponed until March 19, 2018.

## B.  Contentions of the Parties

The substantive issues relating to the proposed map amendment were briefed by the parties before the Zoning Commission.

PAL opposed the map amendment, and the processing of ANC 8A's petition as a rulemaking case, rather than a contested case.  In asserting that the map

---

[4]  As an e-mail from the District Zoning Administrator to PAL's counsel on February 7, 2019 confirmed,

> Pursuant to Subtitle A § 301.5(a), if a permit application for new construction is filed "on or before the date on which the Zoning Commission makes a decision to hold a hearing on the amendment" then . . . "processing of the application and completion of the work shall be governed by Subtitle A § 301.4," [which] . . . states that "any construction authorized by a permit may be carried to completion pursuant to the provisions of this title in effect on the date that the permit is issued." . . .  The date for vesting under Subtitle A § 301.5(a) is the date on which the Building Permit was processed as "Project Dox Under Review."  For the subject Building Permit, that date is August 31, 2017, which occurred in advance of the October 16, 2017 setdown hearing in the MAP Amendment.

(Emphasis in original.)

amendment request should be denied, PAL argued, *inter alia*, that: (1) the proposed downzoning was inconsistent with the Comprehensive Plan and other adopted public policies, including the Plan's specification that industrially zoned land within the District should be preserved; (2) a mixed-use district would allow the self-storage facility to flourish with the surrounding neighborhood; (3) even though the FLUM designates the property as moderate density residential, the industrial land study indicates that a mixed-use area not involving heavy industrial uses could be a benefit to the neighborhood; and (4) the downzoning would have adverse effects on PAL's interests, hindering its ability to augment or renovate the facility or to rebuild it in the event of a fire, collapse, explosion, or act of God, thus adversely affecting the value of its investment.

ANC 8A argued in support of the map amendment and in opposition to PAL's request that the case be heard as a contested case instead of a rulemaking proceeding. In addition to noting that the case did not present an issue of "illegal spot zoning,"[5] ANC 8A argued that the Commission was simply being asked to

---

[5] This court has defined "spot zoning" as "the 'wrenching' of a small parcel from its environment for the benefit of a single owner and without benefit to the public at large or the area affected, and we have adopted a two-pronged test: To constitute illegal spot zoning, the Commission's action (1) must pertain to a single parcel or a limited area -- ordinarily for the benefit of a particular property owner

(continued…)

evaluate whether the downzoning proposal complied with a general policy, not to depart from such a policy.  With respect to compliance with the Comprehensive Plan, ANC 8A adopted the Office of Planning's analysis that supported the downzoning.  ANC 8A also asserted that PAL's focus on discrete provisions of the Comprehensive Plan was misguided, particularly because rezoning of some industrial lands is accepted in certain situations.  With regard to any potential harm to PAL, ANC 8A asserted that not only was any claim of economic hardship purely speculative at this time, but that petitioner assumed the risk in making such an investment.  Finally, ANC 8A argued that petitioner's request for a contested case hearing was untimely and prejudicial.   In ANC 8A's view, PAL's postponement request and its unproductive community meeting demonstrated PAL's use of these tactics to prepare for a contested case instead of a genuine interest in productive discourse.

---

 (…continued)

or specially interested part[y] -- and (2) must be inconsistent with the city's comprehensive plan, or if there is none, with the character and zoning of the surrounding area, or the purposes of zoning regulation, i.e., the public health, safety, and general welfare. *Citizens Ass'n of Georgetown* [*v. District of Columbia Zoning Comm'n*, 402 A.2d 36,] at 39-40 [(D.C. 1979)].   Petitioners have the burden of showing that both prongs of the spot zoning test are met." *Daro Realty, Inc. v. District of Columbia Zoning Comm'n,* 581 A.2d 295 at 299-300 (D.C. 1990).

We express no view here regarding the merits of the arguments of the parties before the Zoning Commission with regard to the map amendment, or the merits of the Commission's decision to downzone the property. The only issue before us is whether the Commission permissibly treated the matter before it as a rulemaking proceeding; finding that it did, we are without jurisdiction to resolve other issues raised by PAL before us.

### C.  The Zoning Commission Hearing

The Zoning Commission heard the case on March 19, 2018. The Commission received letters of support and opposition from community members. In explaining why the case was being conducted as a rulemaking instead of a contested case, Chairman Anthony Hood said, "[t]his is not about any particular case or project. This is a policy [question] whether or not the FLUM, the future land use map, is inconsistent with the zoning." Chairman Hood also stated, "[w]e're here to talk about a policy question. We're here to talk about a rezoning, changing the zoning, not about any project, who wants to do what, who didn't do what."

ANC 8A zoning consultant Laura Richards, ANC Commissioner Muhammad, and other interested residents provided testimony in support of the downzoning. Commissioner Muhammad asserted that "Allowing for the PDR-1

zone to remain in this area will permit the encroachment of an inappropriate commercial use in residential areas. The PDR-1 zoning allows development that will destroy the walkability of the community adjacent to a national park and causes a pedestrian safety hazard." A commissioner from a nearby single member district, who referenced PAL's plan for the property, testified:

> [W]e have a homeless population that has been becoming more popular in the Anacostia park area. And I also know that storage facilities like this are often used as homes for homeless people. . . . I support the rezoning, because I don't want to see that population continue to grow and the kids decide to make those shelter[s] their home.

A few residents testifying in support of the downzoning also referenced the proposed storage facility. One local homeowner said, "the storage unit . . . the project would be a huge eyesore. . . . this particular situation could bring crime, rodents, abandonment, squatters, lights blaring all night, movements all type of hours." Another Fairlawn community resident said, "Two years ago we said 'no' to the storage facility. We have not changed our minds. We still say no."

PAL's founder and managing partner began his testimony by informing the Commission, "I want to provide some background and my company's plans for the property including an explanation as to the benefits a self-storage facility would have for the community and the negative impact the proposed downzoning could

have on Palatine and its investors." Chairman Hood interrupted this testimony, stating "we're not talking about a project so if you can leave out self-storage, no storage, whatever storage. Let's talk about the map amendment. Let's talk about what's being proposed to rezone." PAL's founder responded, "[s]elf-storage is a PDR use. It's an allowable use in the PDR zone. The Zoning Commission should not evaluate this map amendment in a vacuum. . . . A map amendment would not be consistent with the Comp[rehensive] Plan policy because it will create a non-conforming use." When a member of PAL's investment team spoke about the benefits of a self-storage facility, Chairman Hood reiterated the Commission's position: "This is a rulemaking. This is not a contested case. . . . If you want to talk about a self-storage, no storage, whatever, go right ahead because I can guarantee you . . . we're going to stick with the issue." Following comments by the Commission's Vice Chair and the other Commissioners, the Commission unanimously voted to approve the downzoning, pending a 30-day comment period.

### D. Post-Hearing Developments

Following its public hearing on March 19, 2018, the Zoning Commission issued a notice of proposed rulemaking to amend the map from PDR-1 to RA-2. On March 20, 2018, the Commission referred the proposed action to the National Capital Planning Commission for review and comment. On April 26, 2018,

petitioner PAL submitted its comments on the proposed rulemaking, and repeated its request for a contested case proceeding, given that the Zoning Commission would be making a decision about a single piece of property that PAL owns. PAL also reiterated that the map amendment was inconsistent with the Comprehensive Plan, particularly the provisions that encourage the maintenance of industrially zoned property.

On May 14, 2018, the Zoning Commission took final action to approve the map amendment from PDR-1 to RA-2, concluding that conducting the case as a rulemaking was proper because the facts were legislative in nature bearing on general facts, not limited to the details of a given project. The Commission also determined that the map amendment was consistent with the District's Comprehensive Plan, especially in light of the FLUM designation of the property as moderate-density residential use. The order became final on June 15, 2018, and this petition for review followed.

## II. Analysis

### A. Contentions on Appeal

PAL argues on appeal that this court has jurisdiction to review the Zoning Commission's decision with respect to the merits of the downzoning here because the downzoning was a contested case under the District of Columbia

Administrative Procedure Act ("DCAPA"). In support of this argument, PAL contends that the two-pronged test set out in *Donnelly Associates v. District of Columbia Historic Preservation Review Bd.*, 520 A.2d 270 (D.C. 1987), used for determining whether this Court has contested case jurisdiction, is satisfied since "(1) an administrative hearing [was] either statutorily or constitutionally compelled and (2) *such a hearing is adjudicatory, as opposed to legislative, in nature.*" *Brief for Appellant* at 20 (emphasis added).

With regard to the first prong, PAL argues that the hearing required by D.C. Code § 6-641.03, and subsequently held by the Commission, satisfied the statutorily-compelled proceeding requirement of the first prong. It further contends that the matter had contested case status by virtue of the Zoning Regulations. While the Commission does not contend that the first prong was not met, the Commission asserts that the matter did not have contested case status by virtue of the Zoning Regulations and that PAL, in making this argument, relied on a "scrivener's error." We believe the Commission is correct in this regard, and that a hearing is compelled by statute only in a contested case.[6]

---

[6] In its brief, the Commission, argued that

(continued…)

With regard to the second prong, PAL argues that the proceeding was adjudicative in nature because (1) the ANC, in petitioning for the downzoning, did so with the intent of impeding the project, and (2) the Commission was required to weigh information and make a decision directed at the rights of PAL. The Commission argues, to the contrary, that it properly treated the downzoning as a rulemaking because the proceeding was legislative in nature. In addition, the Commission contends that (1) the ANC's alleged intent in filing the petition for downzoning is of no consequence, and (2) the downzoning of a single property does not grant the matter contested case status.

---

(…continued)

> a trial-type hearing is required only in contested cases. *Compare* 11-Z DCMR § 408 with *id.* § 506. PAL contends otherwise; relying on an obvious scrivener's error, it argues that 11-Z DCMR § 100.6, which confirms the Commission's authority to hear rule-making cases, "itself empowers the Commission to process a rulemaking case under the DCAPA contested case procedures." . . . It is true that 11-Z DCMR § 100.6 provides that the Commission "is empowered to hear rule-making cases, as defined in D.C. Official Code § 2-509(7)," but D.C. Code § 2-509 – which deals with contested cases – has no subsection (7). Instead, 11-Z DCMR § 100.6 obviously refers to the definitions section of the DCAPA, D.C. Code 2-502, which does have a subsection (7) and does define "the term rulemaking." A single broken cross-reference in a regulation cannot reasonably be read to rewrite the many other legal provisions governing rulemakings. Read reasonably, a hearing is compelled by statute only if it is a contested case. *See Brief for Appellee*, 18-19.

PAL's second argument – that on the merits the Commission abused its discretion in its decision to downzone the property – is an issue beyond the jurisdiction of this court to consider if we conclude that the Commission's decision to conduct this case as a rulemaking rather than an adjudicatory proceeding was proper. *Schneider v. District of Columbia Zoning Comm'n*, 383 A.2d 324, 329-30 (D.C. 1978).

## B.  Jurisdiction

"Every court has judicial power to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction . . . . [J]urisdictional and merits issues, on occasion, may turn out to be coextensive." *Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 758 (D.C. 1993) (citations and internal quotation marks omitted).  This court has direct review jurisdiction over contested cases decided by the Zoning Commission, but we do not have such review authority over rulemaking cases the Commission decides. *Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n of District of Columbia*, 392 A.2d 1027, 1029 n.3 (D.C. 1978); *Schneider v. District of Columbia Zoning Comm'n*, 383 A.2d at 325; *Citizens Ass'n of Georgetown, Inc. v. Washington*, 291 A.2d 699, 703 (D.C. 1972).

We define a contested case as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of *specific parties* are required by any law (other than this subchapter), or by constitutional right to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502(8) (2016 Repl.) (emphasis added).

Because we conclude that the Zoning Commission's decision to conduct this case as a rulemaking case was proper, we lack jurisdiction to further review the matter. *Schneider v. District of Columbia Zoning Comm'n*, 383 A.2d at 329-30.[7]

## C. The Essentially Legislative Purpose of the Commission Hearing

"Where a statute has required some kind of hearing, we have gone on to determine whether or not the proceeding involved was adjudicatory or legislative in nature . . . which we have further refined into a question of whether the proceeding at issue involved adjudicative or legislative facts." *Donnelly Associates, Ltd. v. District of Columbia Historic Preservation Review Bd.*, 520 A.2d at 277-78 (holding that proceeding was not a contested case, and

---

[7] PAL conceded at oral argument that if we concluded that this matter was properly conducted as a rulemaking case, we would not have jurisdiction to review the underlying merits.

consequently this court did not have jurisdiction).  Professor Kenneth Davis stated

the oft-cited[8] explanation for differentiating between adjudicative and legislative

facts:

> Adjudicative facts are the facts about the parties and their activities, businesses, and properties.  Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case.  Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide *questions of law and policy and discretion.*

*Dupont Circle Citizen's Ass'n v. District of Columbia Zoning Comm'n*, 343 A.2d

296, 300 (D.C. 1975) (deciding that because the proceeding involved legislative

facts, we lacked jurisdiction to review the proceedings) (emphasis added).

The fact that a rezoning involves a proposed project on a single piece of land

is not dispositive in characterizing the type of hearing conducted by the Zoning

---

[8] *See, e.g., Euclid St., LLC v. District of Columbia Water and Sewer Auth.*, 41 A.3d 453, 458 (D.C. 2012); *Chevy Chase Citizens Ass'n v. District of Columbia Council*, 327 A.2d 310, 314 (D.C. 1974); *Hotel Ass'n of Washington, D.C. v. District of Columbia Minimum Wage and Indus. Safety Bd.*, 318 A.2d 294, 306 (D.C. 1974); *Citizens Ass'n of Georgetown, Inc. v. Washington*, *supra*, 291 A.2d at 704 n.14; *Capitol Hill Restoration Soc. v. Zoning Comm'n*, 287 A.2d 101, 105 n.16 (D.C. 1972).

Commission. "Once a single parcel of land is rezoned it necessarily affects the surrounding area since a use previously prohibited in an area is now allowed. Thus the decision, while affecting the individual landowner who proposes [or opposes] the amendment, *is basically one of policy which takes into consideration the needs of the area as a whole*." *W. C. & A. N. Miller Dev. Co. v. District of Columbia Zoning Comm'n*, 340 A.2d 420, 424 (D.C. 1975) (emphasis added).

The Commission, in setting down this matter for a proceeding, unanimously voted to set the case down as a rulemaking case. In its subsequent notice of public hearing, the Commission indicated once again that this would be a rulemaking case and advised that the hearing "w[ould] be conducted in accordance with the rulemaking case provisions of the Zoning Commission's Rules of Practice and Procedure."[9]

Subsequently, the content of the proceeding primarily involved evidence and issues legislative in nature. The Chairman emphasized at the outset of the hearing that the proceeding "was not about any particular case or project," but involved a policy question of "whether or not the FLUM . . . is inconsistent with the

---

[9] See Part I.A., *supra*.

zoning."[10] Numerous persons who wrote to, or appeared before, the Commission expressed concerns that downzoning was essential to preserve the "character of the residential neighborhood" in which petitioner's parcel was located, and to avoid "an added safety hazard to . . . children en-route to and from Orr Elementary School and Anacostia Park." The Office of Planning testified that the FLUM had identified the property parcel as "moderate density residential" since 1985. The Office of Planning accordingly testified that the downzoning would be consistent with the FLUM, and opined, in a report admitted as an exhibit, that the downzoning would also be consistent with FLUM policies of conserving low density neighborhoods, and "Citywide Elements" policies to prevent "encroachment of inappropriate commercial uses in residential areas."

Moreover, the procedures implemented throughout the proceeding were consistent with the procedures required in a rulemaking hearing. *See* 11-Z DCMR § 506. The legislative nature of the proceeding is not undermined by ANC's alleged intent to initiate the downzoning with the purpose of preventing the self-storage facility from being built at the property. ANC's impetus for filing the petition for a map amendment "is of no consequence in determining whether a

---

[10] *See* Part I.C., *supra.*

particular proceeding constitutes a 'contested case.'" *Schneider v. District of Columbia Zoning Comm'n*, 383 A.2d at 329. "[T]he DCAPA's provision regarding public participation in rulemaking, [D.C. Code § 2-505(b)], specifically allows that '[a]ny interested person may petition the Mayor or an independent agency, requesting the promulgation, amendment or repeal of any rule.'" *Id.* at 329 n.17. "Given this provision, it would be incongruous to conclude that whenever a person exercises this statutory right a 'rulemaking' proceeding becomes subject to the 'contested-case' requirement of the DCAPA." *Id.*

Nor is the fact that a rezoning involves a proposed project on a single piece of land dispositive in characterizing the type of hearing conducted by the Commission. The Commission's rezoning authority is not solely limited to the rezoning of multiple properties. Instead, the Commission may rezone a single property as long as doing so does not constitute spot zoning. See note 5, *supra*.

Thus, the Commission proceeding was essentially "a quasi-legislative hearing conducted for the purpose of obtaining facts and information, and views of the public pertinent to the resolution of a policy decision." *W. C. & A. N. Miller Dev. Co. v. District of Columbia Zoning Comm'n,* 340 A.2d at 424 (quoting *Citizens Ass'n of Georgetown, Inc. v. Washington*, 291 A.2d at 705).

We are persuaded on the record before us that the Commission made a determination that was essentially one of "law and policy and discretion" that "[took] into consideration the needs of the area as a whole." *Id.* The Commission unanimously determined that the proposed downsizing should be set down as a rulemaking case. Numerous persons who wrote to, or appeared before, the Commission expressed concerns that downzoning was essential to preserve the "character of the residential neighborhood" in which petitioner's parcel was located, and to avoid "an added safety hazard to . . . children en route to and from Orr Elementary School and Anacostia Park." The Office of Planning opined that the downzoning would be consistent with the Future Land Use Map (FLUM) for the District of Columbia, FLUM policies of conserving low density neighborhoods, and "Citywide Elements" policies to prevent "encroachment of inappropriate commercial uses in residential areas." And the Commission Chairman emphasized at the outset of the hearing that the proceeding "was not about any particular case or project," but involved a policy question of "whether or not the FLUM . . . is inconsistent with the zoning." See parts I.A and I.B, *supra*.

Because we conclude that the proceeding before the Zoning Commission in this matter was a legislative hearing and not a contested case, we do not address

the merits of the Zoning Commission's decision; rather, we dismiss the petition for want of jurisdiction to review the Commission's decision.

*So ordered.*