**Alice S. ACHESON, Appellant,**

v.

**R.B. SHEAFFER and Jack Thomas Elmore, Appellees.**

No. 85–754.

District of Columbia Court of Appeals.

Argued July 1, 1986.
Decided Jan. 26, 1987.

Don V. Harris, Jr., Washington, D.C., for appellant.

Beverly J. Burke, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time brief was filed, and Charles L. Reischel, Deputy Corp. Counsel,

5. Nor did he raise the issue in his motion for a          new trial.

Washington, D.C., were on brief, for appellee Sheaffer. Richard A. Green, with whom David W. Briggs, Washington, D.C., was on brief, for appellee Elmore.

Before MACK, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

█ The sole issue presented in this case is whether the division of several property lots and their subsequent combination into two lots of record[1] constitutes a subdivision within the meaning of the Historic Landmark and Historic District Protection Act, D.C.Code §§ 5–1001 et seq. (1981). We find that these actions do not constitute a subdivision and affirm.

James Elmore owned four lots at 2811 P Street, N.W. in the Georgetown historic district. This district is covered by the Historic Landmarks and Historic District Protection Act (the Act). Two of the lots were lots of record. Each of these lots was rectangular; one lot had a house on it; the other did not. The two other lots were not lots of record, and were small and unbuildable. On October 23, 1984, R.B. Sheaffer, the Acting Surveyor of the District of Columbia, admitted to record two new lots, lots 295 and 296, which replaced the four earlier lots. In order to create lot 295, parts of three of the previous lots were added together. Lot 296 was created by adding parts of all four lots together.

The Acting Surveyor admitted lots 295 and 296 to record pursuant to the D.C. Subdivision Regulations, Art. I, § 2(j) (1967), which define a subdivision as "the division or assembly of land into one or more lots of record." (Emphasis added.) Although Elmore's property is located in a historic district, the Acting Surveyor found that the actions taken to create lots 295 and 296 did not constitute a subdivision as defined by the Act. The Act defines a subdivision as the "division of a lot into 2 or more lots of record." D.C.Code § 5–1002(13) (1981). Therefore, the Acting Surveyor did not refer this action to the Mayor and the Historic Preservation Review Board, and Elmore did not have to seek approval of his application or comply with the Act's extensive procedural requirements. See D.C.Code § 5–1006 (1981).

Alice S. Acheson, a neighbor with property adjacent to Elmore's Georgetown property, challenged the Acting Surveyor's decision in Superior Court. She argued, and continues to argue, that the actions taken here constitute a subdivision under the Act simply because each lot was divided before lot parts were added together to create a new lot of record. The trial court rejected this argument and granted the appellees' motion to dismiss.

In contrast to the Subdivision Regulations, which define a subdivision as "the division or assembly of land into one or more lots of record," the Act defines subdivision as the "division of a lot into 2 or more lots of record." In its Capsule Legislative History, the D.C. Council Committee, perhaps responding to the comments of interested citizens urging that the Act cover assemblies as well as divisions of land,[2] explained that the term subdivision

does not cover an aggregation of two or more lots into a single lot. This act is designed to maintain the character of historic landmarks and districts by limiting the loss of open space which contributes to the character of those landmarks and districts. The act of an assemblage

1. A "lot" is a general term used to describe any plot, parcel or piece of land. A "lot of record" is a lot platted and recorded by the District of Columbia Surveyor. See 11 DCMR §§ 199.4, 199.9 (1986); 14 D.C.Reg. 39 (1967).

2. Appellee Elmore noted that a memorandum submitted by the Citizens Association of Georgetown to the D.C. Council during its consideration of the Act urged that the Act conform to the Subdivision Regulations by including assemblies of land within its scope. In addition, he noted, tape recording of hearings held during the same period of time reveal that several witnesses made similar requests. Thus, the Council was well aware of the distinction between the proposed Act and the Subdivision Regulations when it made its decision.

of lots without more does not adversely affect the goals of this Act.

Committee on Housing and Urban Development, Capsule Legislative History of Bill 2–367, "The Historic Landmark and Historic District Protection Act of 1978", at 5 (Oct. 5, 1978). It is clear from these comments that the omission of assemblies of land from the purview of the Act was deliberate.[3]

The Acting Surveyor described his actions taken with regard to Mr. Elmore's property as follows:

> In my action admitting Lots 295 and 296 to record, Lot 280, a four (4) foot wide strip of Lot 281, an allocable portion of Elmore's land marked Alley Closed and an allocable portion of Elmore's land marked OF-275 were combined to form Lot 296, and the remainder portion of Lot 281, the remainder portion of Elmore's land marked Alley Closed and the remainder portion of Elmore's land marked OF-275 were combined to form Lot 295.

The action described here is an *aggregation* of parts of four lots (two recorded and two unrecorded) into two lots of record, an action which does not fall within the definition of "subdivision" contained in the Act. Appellant argues that in order for the aggregation to have been made, the preexisting lots had to be first subdivided into appropriate portions. We think that it is the end product, the "aggregation of two or more lots into a single lot," with which the D.C. Council was concerned in the

above-quoted passage. But even if the Acting Surveyor's action was thought to have consisted of a subdivision followed by an assembly, the subdivision would still not fall within the Act's definition: there occurred no "division of a lot into 2 or more lots of record." Rather, as the trial court noted, "there was a division of at least three lots ... into parts of recorded lots," these parts to be subsequently aggregated. We conclude that the action taken by the Acting Surveyor did not fall within the Act's definition of "subdivision", and was not, therefore, subject to the Act's procedural requirements.

■ Appellant argues in the alternative that the Acting Surveyor's interpretation of the word "subdivision" in the Historic Landmark and Historic District Protection Act was a "rule" for purposes of the D.C. Administrative Procedure Act (DCAPA), D.C.Code § 1–1501 *et seq.* (1981), and is invalid, not having been adopted according to the DCAPA's notice and comment procedures.[4] We disagree.

There are no rigid formulas for determining when an official action results in a "rule" for purposes of the DCAPA. While many of the standards, interpretations, habits, and ideas by which administrative officials make thousands of daily decisions have widespread generalized and future effect, they do not all come within the DCAPA's definition of formal "rules" requiring notice and comment. Likewise, the line between an adjudicative determination and a "rule" under the DCAPA is a thin one:

---

3. Seizing upon the words "without more" in this passage, appellant argues that the definition of "subdivision" in the Act includes everything that is a subdivision under the Subdivision Regulations with the single exception of "an assemblage of lots without more"; in other words, it is only assemblages of lots *without more* that are exempted from the required review under the Act. The action of the Acting Surveyor here, she argues, was an assemblage of lots *with* more (namely, with prior or subsequent subdivisions), and, therefore, does come under the coverage of the Act. We think that such a tortured explanation is not necessary to derive the meaning of this sentence. More likely, the Committee merely intended to point out that an aggrega-

tion of two or more lots does not result, by itself, in the loss of open space. Even if, for example, new construction is contemplated on the resulting lot, it is subject to prior review and approval under § 8 of the Act. D.C.Code § 5–1007 (1981).

4. Under § 1–1502(6) of the DCAPA, "[t]he term 'rule' means the whole or any part of any Mayor's or agency's statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of the Mayor or of any agency."

an agency decision, though directed to a particular problem of named individuals, may prospectively affect great numbers of people. *See, e.g., SEC v. Chenery,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *Citizens Association of Georgetown v. Washington,* 291 A.2d 699 (D.C. 1972).

Although the line dividing "rules" from adjudicatory determinations or from informal statutory interpretations applied in particular cases is not a bright one, courts have long recognized a distinction between them. "[W]e must consider whether in the particular proceeding, the [agency] ... performs an adjudicative function, weighing particular information and arriving at a decision directed at the rights of specific individuals, or sits in a legislative capacity, making a policy decision directed toward the general public." *Citizens Association of Georgetown, supra,* 291 A.2d at 704; *United States v. Florida East Coast Railway Co.,* 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973). The Acting Surveyor here was engaged in his statutory function. He had no authority to make a policy decision affecting the general public. Although other persons may in the future be affected by his statutory interpretation as applied here, the same is true of countless administrative actions taken every day. "Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule." *SEC v. Chenery, supra,* 332 U.S. at 202, 67 S.Ct. at 1580.

*Affirmed.*