Nikita PETTIES, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

No. CIV.A. 95–0148PLF.

United States District Court, District of Columbia.

Dec. 24, 2003.

See also 238 F.Supp.2d 88 and 276 F.Supp.2d 89.

Kelly Bagby, Lisae C. Jordan, Jesse D. Stein, University Legal Services, Washington, DC, for Plaintiffs.

Robert C. Utiger, Assist. Corporation Counsel, Washington, DC, for Defendants.

### OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for consideration of the Report and Recommendations of the Special Master in the Matter of the City Lights School Invoice Dispute Hearing Held on July 2, 2003 ("City Rep."), the Report and Recommendations of the Special Master in the Matter of the Phillips Program Invoice Dispute Hearing Held on July 7, 2003 ("Phill.Rep."), and the Report and Recommendations of the Special Master in the Matter of the Foundations Schools Invoice Dispute Hearing Held on July 23, 2003 ("Found.Rep."), all filed by Steven M. Schneebaum, Esq., in his capacity as Hearing Officer and Designee of Special Master Elise Baach, Esq. ("Hearing Officer").

The Reports concern certain invoices submitted by the City Lights School, the Phillips Program and the Foundation Schools for services rendered as private providers of special education to defendant District of Columbia Public Schools ("DCPS") students. The issue underlying each report is DCPS's 2002 implementation of a new policy under which payments to private providers were determined in part by the attendance records of individual students. Defendants filed a consolidat-

ed objection to the Reports. Plaintiffs responded in support of the reports and concurrently filed a motion for a permanent injunction. See Plaintiffs' Motion for Injunction Prohibiting Implementation of the DCPS Attendance Policy ("Pls.' Mot.") at 1–2. Defendants oppose plaintiffs' motion.

### I. BACKGROUND

#### A. Payment to Private Providers Pursuant to the October 11, 2002 Order

Payments by DCPS to private providers for special education services provided to DCPS students are made pursuant to an Order of this Court, which details a highly structured payment scheme and delineates resolution procedures for disputes that arise concerning invoices submitted by private providers. See Order Modifying and Supplementing August 25, 1997 Order Regarding Payment System, dated October 11, 2002 ("October 11 Order" or "Order"). The Order was entered by the Court on joint motion of the parties.

Under the October 11 Order, private providers must submit to defendants actual invoices for services rendered no later than the fifth day of every month following the month in which the services were provided. See October 11 Order ¶ (a). Payments are to be made by the first business day of the following month. See id. If defendants dispute any charges contained in an invoice, "defendants shall provide a written dispute notice to the provider no later than 20 days after the invoice was submitted," containing a detailed description of the basis of the dispute and all supporting documentation. Id. ¶ (b). If a portion of the invoice is undisputed, defendants must submit payment for that portion to the provider by the fifth day of the month following the month in which the

invoice was submitted. *See id.* If defendants fail to provide a timely, well-documented dispute notice, "the amount invoiced by the school or provider will be accepted and paid by the defendants." *Id.* If a provider disagrees with the amount paid by defendants, it must submit to DCPS's Chief Financial Officer the reasons for its objection, in writing with supporting documentation, no later than 10 business days after receipt of a dispute notice. *See id.* ¶ (d). If a provider fails to submit such written objections within the time provided, "then the amount paid by the defendants will be understood to be accepted by the school or provider." *Id.*

Within 10 days of receipt of the provider's written objection and documentation under Subparagraph (d) of the October 11 Order, defendants "shall issue either a separate check reconciling any difference from the amount originally paid, or a written rejection of any claim of the school and/or the provider and the reason for the rejection." *See* October 11 Order ¶ (e). A reconciliation or written rejection as set forth in Subparagraph (e) "will serve as the final administrative decision of the defendants." *Id.* ¶ (f). If the provider "is not fully satisfied with the reconciliation or the basis for rejection of their (sic) claim as set forth in subparagraph (e), and the parties are unable to reach a resolution, the provider may file a request for a proceeding to determine findings of fact and recommendations for resolution with the Office of the Special Master." *Id.* ¶ (g). A proceeding on the dispute shall be held before the Special Master or her designee. *See id.* ¶ (i).[1]

## B. *The Disputed "60/40" Policy*

On December 18, 2002, DCPS sent a letter to private providers of special education services for DCPS students entitled "Guidelines for Attendance Incentives." *See* Pls.' Mot., Ex. 4, Letter of December 18, 2002, from DCPS Office of Special Education to Nonpublic School Administrators ("Guidelines Letter"). In this letter DCPS announced a new attendance "incentive" to encourage non-public schools "to undertake all reasonable efforts to ensure increased attendance for students . . . who may have disproportionately high absenteeism rates." Guidelines Letter. The Guidelines Letter indicated that "if a funded student attend[ed] a non-public school for 60% or more of all school days in a particular billing month, DCPS [would] pay the school or provider for all school days in that particular month." *Id.* ¶ 1. If a student attended less than 60% of all schools days in a month DCPS agreed to pay "the daily rate for only such days attended." *Id.* ¶ 2. The Guidelines Letter also indicated that "[a]ll non-public schools will comply with the DCPS' 'Guidelines for Implementation of the D.C. Public Schools Attendance Plan,'" a DCPS Directive issued in 1998 ("1998 Attendance Plan"). *Id.* ¶ 5. The policy announced in the Guidelines Letter became known as the "60/40 Policy." *See* City Rep. at 2.

Upon receiving the March 2003 invoices from the City Lights School, the Phillips Program and the Foundation Schools, DCPS implemented the 60/40 Policy by disputing the providers' invoices, pursuant to the October 11 Order, on the basis of

---

1. Special Master Elise Baach appointed Steven M. Schneebaum, Esq., as her designee for these purposes pursuant to the October 11 Order and to the Modification of Order of Reference of October 11, 2002, which outlined in greater detail the Special Master's role in the fee dispute resolution proceedings.

*See* October 11 Order ¶¶ (g)-(j); Modification of Order of Reference ¶ 4 ("The Special Master, in consultation with the defendants and plaintiffs' counsel, may recommend appointment of a proceeding officer as designee to perform the duties described in this Order.").

the new payment scheme. *See* City Rep. at 3; Phill. Rep. at 1–2; Found. Rep. at 2. In response, the three providers filed requests for a dispute proceeding before the Special Master in accordance with the October 11 Order. The reports and recommendations generated from those proceedings are currently before the Court. In the interim between the Hearing Officer's filing of the reports and recommendations and the Court's consideration of the issues, the Office of Special Education sent official notice to private providers on October 16, 2003 that "as of the July invoices received in August, [DCPS] no longer applied the 'Guidelines for Attendance Incentives' to invoices submitted to DCPS by non-public providers." Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Injunction, Ex. 1, Letter of October 16, 2003, from Dr. Raymond W. Bryant to Non–Public Administrators ("October 16 Letter"). Thus, the policy at issue here was short-lived.

### C. *The Hearing Officer Reports and Recommendations*

City Lights challenged the viability of the 60/40 Policy as a legitimate basis on which DCPS could dispute the March 2003 invoice on four separate grounds: (1) the policy is a "rule" as defined under Section 2–502(6)(A) of the District of Columbia Administrative Procedure Act ("DCAPA"), but the rule is invalid because DCPS never published notice of such a rule nor afforded the providers and other interested persons an opportunity to comment as required by statute; (2) City Lights is entitled to be paid its monthly lump sum charges so long as they are reasonable and DCPS has the burden to demonstrate that they are not; (3) application of the 60/40 Policy only to non-public school students violates the Equal Protection Clause of the United States Constitution; and (4) application of the

60/40 Policy will result in a violation of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), because it will "cause the closure of programs at financially precarious institutions like City Lights, resulting in disenrollment not only of students whose attendance triggers the implementation of the Policy but of all students who participate in the affected programs." City Rep. at 3–4. The Phillips Program similarly asserted in its dispute proceeding that in announcing the 60/40 Policy in the Guidelines Letter DCPS promulgated a binding rule without following the procedural requirements of the DCAPA. In the alternative, the Phillips Program argued that the policy would result in impermissible unilateral changes in placements in violation of the IDEA. *See* Phill. Rep. at 3.

The Hearing Officer rejected City Lights's argument that application of the 60/40 Policy only to non-public students violated plaintiffs' equal protection rights because, *inter alia*, City Lights had failed to demonstrate that special education services are a fundamental right protected by the Constitution or that the 60/40 Policy violates that right. The Hearing Officer also declined to consider City Lights's argument with respect to its entitlement to be paid in a lump-sum form in the absence of any legal argument from the parties. *See* City Rep. at 3–5. The Hearing Officer then concluded that the providers had not demonstrated that the policy violates the IDEA because the dispute before him concerned invoices for March 2003 and City Lights had provided no evidence that any student was unilaterally reassigned during March or that City Lights was forced to shut down any classes during March as a result of the policy. The Hearing Officer determined, however, that the future affects of the policy likely would threaten City Lights with a "serious loss of revenue," but that steps could be taken in

order to mitigate that harm prior to the unlawful displacement of students. *See id.* at 5–7.

Turning to the issues raised by all three private providers, the Hearing Officer concluded that the 60/40 Policy is a rule under the DCAPA that DCPS failed to promulgate properly because it did not provide notice and an opportunity to comment as required by law, and that DCPS therefore relied on an impermissible ground, the unlawful 60/40 Policy, in disputing the March 2003 invoices. *See* City Rep. at 7–10; Phill. Rep. at 3–6; Found. Rep. at 3–6. The Hearing Officer rejected DCPS's argument that he improperly was considering a question of District of Columbia law that lay outside the jurisdictional scope of these class actions. He concluded instead that by offering the 60/40 Policy as the sole justification for its disputes of the March 2003 invoices, DCPS itself placed the legitimacy of the policy at issue and thus invited scrutiny. *See* City Rep. at 11; Phill. Rep. at 6; Found. Rep. at 5.[2]

The Hearing Officer also concluded that even if the 60/40 Policy had been properly implemented, it could not serve as a legitimate basis for disputing the March 2003 invoices because the Policy is inconsistent with the 1998 Attendance Plan, a plan the Guidelines Letter itself directs the providers to follow. *See* Phill. Rep. at 6; Found. Rep. at 5. Specifically, the 1998 Attendance Plan requires a school to maintain a student's placement until that student has been absent for 20 consecutive days. *See* Pls.' Mot., Ex. 5, Directive No. 5224, D.C. Public Schools Attendance Plan Guidelines at 5. By contrast, the 60/40 Policy effectively allows DCPS to withhold

tuition payments to providers when students are absent for fewer than 20 days in a short school month. The Hearing Officer concluded that these contradictory policy directives thus could function to require providers to maintain placements while relieving DCPS from paying for the education provided. *See* Phill. Rep. at 6; Found. Rep. at 5. This, the Hearing Officer concluded, "defies the *Petties* mandate that special education placements must be maintained and that, in order to accomplish that objective, non-public providers must be paid timely and fully." Phill. Rep. at 6; Found. Rep. at 5.

Upon concluding that DCPS could not rely on the 60/40 Policy to justify its disputes of the March 2003 invoices, the Hearing Officer recommended that the Court direct DCPS to pay the private providers the amounts disputed by DCPS on the basis of the Policy. Pursuant to Paragraph 3 of the Modification of Order of Reference of October 11, 2002, he also recommended that DCPS pay the providers' costs incurred in pursuing the disputes. *See* City Rep. at 12; Phill. Rep. at 11; Found Rep. at 10.

Finally, in the Foundation Schools report, the Hearing Officer addressed the matter of an individual student, M.W., the invoice for whom DCPS originally challenged on the basis of the 60/40 Policy. According to the Hearing Officer, DCPS raised a second basis for disputing the invoice for the first time during the dispute proceedings, asserting that the services provided were not called for in the student's individualized education program. *See* Found. Rep. at 8. The Hearing

---

**2.** The Hearing Officer articulated the additional concerns that although DCPS announced the 60/40 Policy as an incentive to private providers to reduce absenteeism, DCPS failed to show how the schools would benefit from the mandatory policy. The

Hearing Officer also noted that the Policy was applied retroactively to schools that already had established their yearly budgets in reliance on the then-existing payment structure. *See* City Rep. at 10–11; Phill. Rep. at 4–5; Found. Rep. at 3–4.

Officer concluded that DCPS's introduction of a new basis of dispute at the dispute hearing violated the October 11 Order's requirement that DCPS file written dispute notices within 20 days of receipt of an invoice. The Hearing Officer determined that allowing DCPS to raise new bases for disputes for the first time at a dispute proceeding would defeat the October 11 Order's purpose of ensuring that providers receive adequate notice and have an opportunity to respond to any disputes. *See id.* at 9.

In their objections to the three reports of the Hearing Officer, defendants assert that the private providers are not parties to this action and thus do not have standing to ask the Special Master for the relief they requested. Defendants suggest that the more proper vehicle through which the Court should determine the viability of the 60/40 Policy is plaintiffs' motion for a permanent injunction. *See* Defendants' Objections to the Reports and Recommendations in the Phillips Program, City Lights School and the Foundation School Invoice Dispute Hearings ("Defs.' Rep. Obj.") at 1–3. Defendants also argue that the DCA-PA is irrelevant to the questions properly before the Court in this action because the jurisdiction of the Court must be predicated on the effect of any failure of DCPS to fully and timely pay providers on the plaintiffs under the IDEA. Defendants maintain that in the current context such a deprivation of rights is wanting: "[I]f the '60/40' policy results in a denial of plaintiffs' federal rights [under the IDEA] this Court can enjoin it even if absolutely proper under all local laws including the D.C. APA. If, on the other hand the '60/40' policy does not result in a unilateral change in placement this Court's determi-

nation of the legality of that policy under purely local law will not vindicate plaintiffs' federal rights." *Id.* at 4.[3]

## II. DISCUSSION

### A. *Improper Invocation of the 60/40 Policy*

■ The Court agrees with the Hearing Officer that by submitting dispute notices based solely on the 60/40 Policy, DCPS invited scrutiny of the Policy. The October 11 Order details a highly structured payment scheme and delineates resolution procedures for DCPS's disputes of invoices submitted to it by private providers. The Order was proposed jointly by the parties and constitutes their agreement to a procedure under which defendants must articulate their "basis" and "reasons" for disputing any invoices. October 11 Order ¶ (b). Thereafter disputes are submitted to the Special Master or her designee for findings and recommendations upon request of the private provider, *id.* at ¶¶ (g)-(j), and "objections," "defenses" and "arguments" are presented to the Court with respect to any report filed by the Special Master or her designee. *Id.* at ¶ (j). The terms of the agreed-upon Order do not limit the objections, defenses and arguments that arise from the dispute proceedings to factual arguments.

Under the October 11 Order, defendants are to provide legitimate, reasonable bases for any disputes, be they factual or legal in nature. Where DCPS makes a global policy change in the way it calculates payments to private providers, and offers that new policy as a justification for disputing payments to private providers, the Court necessarily must consider whether defendants' justification is lawful whether it is

---

**3.** Defendants did not respond to the findings related to M.W., the individual Foundation Schools student.

based on facts or law. If the Court were not authorized to undertake such an examination, it would not be able to perform its role under the October 11 Order as agreed to by the parties. *See also Petties v. District of Columbia*, 276 F.Supp.2d 89, 93–95 (D.D.C.2003).

■ Upon careful consideration of the Hearing Officer's reports and the parties' positions, the Court concludes that DCPS improperly relied on the 60/40 Policy in disputing the March 2003 invoices. The Court adopts the Hearing Officer's legal conclusion that the policy was in fact a "rule" under the District of Columbia Code and that it was promulgated without providing notice and a comment period as is required by the statute.

Under Section 2–502(6)(A) of the District of Columbia Code, "[t]he term 'rule' means the whole or any part of any ... agency's statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of ... any agency." D.C. CODE § 2–502(6)(A). The Court concludes that the Guidelines Letter functioned as a rule announcing and implementing a new policy of general applicability that fundamentally changed DCPS's practice with respect to payment to private providers for special education services. The letter's self-proclaiming title of "Guidelines" is irrelevant. An examination of the content and purpose of this announcement makes it clear that it constitutes a rule under the statute. *See Milk Industry Foundation v. Glickman*, 949 F.Supp. 882, 893–94 (D.D.C.1996) (APA defines "rule" broadly and cannot be evaded by calling it something else; it is "the substance of what the [agency] ... has done which is decisive"); *Acheson v. Sheaffer*, 520 A.2d 318, 321 (D.C.1987) (policy decisions "directed towards the general

public" subject to rule-making procedures of DCAPA). *Compare Stevenson v. District of Columbia Board of Elections & Ethics*, 683 A.2d 1371, 1378–79 (D.C.1996) (internal manual providing guidelines for inner-agency implementation of verification rules not a rule); *District of Columbia v. North Washington Neighbors, Inc.*, 367 A.2d 143, 147 (D.C.1976); (letter to Senator describing District's position as to effect of existing rule not rule-making).

It is not disputed that DCPS did not provide notice or opportunity for comment prior to implementing the 60/40 Policy. The rule therefore was promulgated unlawfully. *See* D.C. CODE § 2–505(a) (prior to adoption of rule, governmental agency must "publish in the District of Columbia Register ... notice of the intended action so as to afford interested persons opportunity to submit data and views either orally or in writing, as may be specified in such notice."); *Junghans v. Dep't Human Resources*, 289 A.2d 17, 23 (D.C.1972) (agency order implementing reduction of public assistance payment levels invalid for failure to follow rule-making notice requirements). It follows that DCPS cannot rely on the 60/40 Policy to justify its dispute of the March 2003 invoices. *See Webb v. District of Columbia Department of Human Services*, 618 A.2d 148, 151 (D.C.1992) ("Since it is conceded that the eligibility guidelines used to deny benefits in this case were not promulgated in compliance with the DCAPA, the agency's action based on the guidelines is invalid."); *Rorie v. District of Columbia Dep't of Human Resources*, 403 A.2d 1148, 1154 (D.C.1979) (application for emergency services denied on basis of improperly promulgated guidelines "must ... be evaluated as though the invalid regulation had not existed").

The Court also finds compelling the Hearing Officer's conclusion that the internal inconsistency between the 60/40 Policy

and the 1998 Attendance Plan risked placing the providers in an untenable position. The combination of the two policies required maintenance by private providers of placements for students until they were absent for 20 consecutive days, but effectively relieved DCPS from paying for a portion of that period if a child were absent more than 40% of any one month but less than 20 consecutive days. While this by itself might not be a sufficient basis for decision at this time, this contradiction, if actualized, at some point risks a direct violation of the IDEA. As the Court has concluded time and again, "failing to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placement, which is prohibited by the IDEA." *Petties v. District of Columbia,* 881 F.Supp. 63, 66 (D.D.C.1995). *See also Petties v. District of Columbia,* 238 F.Supp.2d 88, 90 (D.D.C.2002).[4]

██ With respect to the Hearing Officer's recommendations concerning the individual Foundation Schools student, M.W., the Court agrees that allowing DCPS to raise a new basis for dispute of an invoice for the first time at the dispute proceedings would undermine the procedural protections provided in the October 11 Order. *See* Found. Rep. at 9. Were the Court to allow DCPS to take such a tack, the initial dispute provisions of Subparagraph (b) of the October 11 Order would be rendered ineffectual. The Court will not interpret the Order to allow circumvention of such a critical stage in the dispute procedures. *See Petties v. District of Columbia,* 276 F.Supp.2d at 94 ("The Court will not interpret the Order in a manner that potentially eliminates an integral step from the payment procedures.").

### B. *Plaintiffs' Motion for Permanent Injunction*

██ In their separate motion for a permanent injunction, plaintiffs ask the Court to enjoin: (1) the future implementation of the 60/40 Policy; (2) the limitation of payment for special education services based exclusively on students' attendance; and (3) the promulgation of any new policy addressing issues concerning payments linked to student attendance absent thirty days' notice to plaintiffs and the Special Master. Plaintiffs also seek an order directing defendants to pay the three providers in full for any invoice disputed on the basis of the policy. *See* Pls.' Mot. at 1–2. Defendants oppose plaintiffs' motion, asserting that the motion is moot because in the October 16 Letter, DCPS decided not to implement the policy prospectively. *See* Defendants' Opposition to Plaintiffs' Motion for an Injunction Prohibiting the Implementation of the DCPS Attendance Policy ("Defs.' Inj. Opp.") at 4. Defendants also argue that the 60/40 Policy as implemented in the past did not result in a violation of plaintiffs' federal rights because the Court's orders only require defendants to pay for services actually delivered, and that plaintiffs have failed to demonstrate that the 60/40 Policy resulted in a unilateral change in placement. *See id.* at 6–9. Defendants then reiterate their position that review of the policy under the DCAPA is unnecessary and inappropriate. *See id.* at 2–4.

The Court concludes that plaintiffs' motion for a permanent injunction is moot. While DCPS's October 16, 2003, letter announcing its decision to stop applying the 60/40 Policy does not automatically moot plaintiffs' motion, particularly since it does not itself indicate that the policy never will

---

**4.** In view of its decision with respect to the 60/40 Policy, the Court will not address the remaining arguments considered by the Hearing Officer.

be revived, defendants represent in their brief that "the 60/40 Policy Guidelines have now been abandoned as to future application." Defs.' Inj. Opp. at 5. The Court accepts this plain statement as an assurance by the government that the 60/40 Policy will not be reenacted. Therefore, to the extent that plaintiffs request prospective relief, plaintiffs' motion for a permanent injunction is moot. To the extent that plaintiffs request retroactive relief for the private providers, that request also is moot because the issue has been addressed through the Court's review of the three reports and its adoption of the recommendations of the Special Master.

Accordingly, for the foregoing reasons it is hereby

ORDERED that the Preliminary Report and Recommendations of the Special Master in the Matter of the City Lights School Invoice Dispute Hearing Held on July 2, 2003 is ADOPTED; it is

FURTHER ORDERED that District of Columbia Public Schools shall pay to the City Lights School the sum of $54,223, representing the entire amount in dispute for March 2003 as a result of the application of the 60/40 Policy, plus any costs incurred by City Lights for its presentation of this dispute to the Special Master; it is

FURTHER ORDERED that the Report and Recommendations of the Special Master in the Matter of the Phillips Program Invoice Dispute Hearing Held on July 7, 2003 is ADOPTED; it is

FURTHER ORDERED that District of Columbia Public Schools shall pay to the Phillips Program the sum of $12,199.37,

representing the entire amount in dispute for March 2003 as a result of the application of the 60/40 Policy, plus any costs incurred by the Phillips Program for its presentation of this dispute to the Special Master; it is

FURTHER ORDERED that the Report and Recommendations of the Special Master in the Matter of the Foundations Schools Invoice Dispute Hearing Held on July 23, 2003 is ADOPTED; and it is

FURTHER ORDERED that District of Columbia Public Schools shall pay to the Foundation Schools the sum of $21,922, representing the entire amount in dispute for March 2003 as a result of the application of the 60/40 Policy, plus the taxable costs of $1203.67 incurred by the Foundation Schools for its presentation of this dispute to the Special Master.[5]

SO ORDERED.

---

5. By letter to the Court of September 4, 2003, the Hearing Officer indicated that the Foundation Schools provided to him a statement of taxable costs incurred in pursuing this dispute, an amount which defendants did not challenge. By letter to the Court of October 2, 2003, the Hearing Officer further indicated that the parties to the dispute resolved a portion of the dispute reducing the total amount remaining in dispute for March 2003 to $21,922.